**In re LOCKE MILL PARTNERS, Debtor.**

**Bankruptcy No. B–94–50500C–11W.**

United States Bankruptcy Court,
M.D. North Carolina,
Winston–Salem Division.

Feb. 13, 1995.

---

2.  *See Palazzi v. Estate of Gardner,* 32 Ohio St.3d     169, 512 N.E.2d 971 (1987).

Gail C. Arneke, Winston–Salem, NC, for debtor.

David Meschan, Greensboro, NC, for Holbrooks.

## MEMORANDUM OPINION

WILLIAM L. STOCKS, Bankruptcy Judge.

This case came before the court on February 8, 1995, for hearing on confirmation of the Debtor's plan or reorganization. The principal creditors of the Debtor, Gene S. Holbrooks and Anne M. Holbrooks, who hold both secured and unsecured claims, voted against the plan and also filed an objection to confirmation of the plan. The only matter related to confirmation which was heard on February 8, 1995, was the portion of the Holbrooks' objection based upon the assertion that the plan could not be confirmed because it had not been accepted by at least one class of impaired creditors, determined without including any acceptance of the plan by any insider, as required by § 1129(a)(10). The Debtor points to Class A–3 in arguing that the requirements of § 1129(a)(10) have been satisfied. Class A–3 consists of the claim of the Locke Mill Plaza Association, Inc. (the "Association"). The Debtor contends that the approval of the plan by the Association satisfies the requirements of § 1129(a)(10) because, according to the Debtor, the Association is not an insider. On the other hand, the Holbrooks, in their objection, take the position that the Association is an insider and, therefore, its acceptance of the plan does not satisfy the requirements of § 1129(a)(10). Having considered the evidence offered by the parties and the arguments of counsel, the court has concluded that the objection by the Holbrooks should be sustained and that confirmation of the Debtor's plan must be denied. The findings of fact and conclusions of law upon which the court relies are set forth in this memorandum opinion.

## FACTS

The Debtor is a limited partnership in which Diversified Historic Investors VI (which is a Pennsylvania limited partnership) is a general partner with a 1% interest. Diversified Historic Investors VI is also a limited partner with a 98% interest and DHP, Inc. is a limited partner with a 1% interest. The primary assets of the Debtor consists of 83 condominium units owned by the Debtor in the Locke Mill condominium complex which is located in Concord, North Carolina. The 83 condominium units were transferred to the Debtor on January 21, 1994, by Diversified Historic Investors VI. The 83 condominium units were purchased by Diversified Historic Investors VI from Gene S. Holbrooks, Terry Moss and Concord–Kannapolis Investment Company in 1988.

There are three types of condominium units in the Locke Mill condominium complex: residential units, office units and retail units. The units owned by the Debtor consists of 78 residential units and 5 retail units. The Association is a non-profit corporation which was incorporated under the laws of the State of North Carolina on August 31, 1987. It was formed by the developers of Locke Mill condominium complex shortly before they completed the Locke Mill project. Under its articles of incorporation, the purpose for which the Association was formed was to operate, manage, and supervise the affairs of Locke Mill Plaza Condominiums pursuant to the provisions of Chapter 47C of the North Carolina General Statutes.

Each owner of a unit at Locke Mill condominium complex automatically is a member of the Association. The Association has not issued any kind of stock certificates or other written security. However, under the organizational documents for the Association consisting of the articles of incorporation and the corporate bylaws and the declarations for the condominium complex, the Association has a board of directors which is elected by the members of the Association. The total votes in the Association are allocated to units on the basis of each unit having one vote. The vote allocated to a unit may be cast by the owner of the unit in person or by proxy. For purposes of voting for the election of directors, members of the Association are divided into three classes: Class A, which con-

sists of the owners of residential units; Class B, which consists of the owners of office units; and Class C, which consists of the owners of commercial/retail units.

Since at least 1988, the board of directors has consisted of eight directors. Under the bylaws, the Class A members elect four directors, the Class B members elect two directors and the Class C members elect two directors. At all times since 1988, the units at the Locke Mill condominium complex have consisted of 149 residential units, 20 office units and 16 retail units. The Debtor owns 78 out of the 149 residential units which means that the Debtor has a majority of the residential units. This majority status has enabled the Debtor to designate or elect at least four of the eight directors at each election of directors which has been held since the Debtor acquired its units in the Locke Mill condominium complex. The current board of directors for the Association consists of eight members. At least four of those members were designated by the Debtor. Between 1988 and January 21, 1994, the 83 units now owned by the Debtor were owned by Diversified Historic Investors VI, which is a limited and a general partner in the Debtor. During that period of time, each eight person board of directors which was elected for the Association included at least four directors who were designated or elected by Diversified Historic Investors VI.

The directors selected by Diversified Historic Investors VI, while it owned the 83 units now owned by the Debtor, were active members of the board of directors. One of the directors designated by Diversified Historic Investors VI usually was president of the Association while Diversified Historic Investors VI owned the 83 units now owned by the Debtor. The directors selected by Diversified Historic Investors VI established the agendas for the meetings of the Board, consistently voted together as a block vote and consistently initiated and prevailed on the matters of substance which were acted upon by the Board. The approach taken by these directors was one of either having their wishes and motions accepted by the Board or they created a deadlock on such matters. The other directors, rather than allowing a deadlock to occur or continue, generally acceded to the wishes and motions of the four directors selected by Diversified Historic Investors VI. The same situation regarding the board of directors continued following the transfer of the 83 units from Diversified Historic Investors VI, except that the Debtor, as owner of the 83 units, designated four directors. Thereafter, the directors who were designated by the Debtor functioned in the same manner as the directors formerly selected by Diversified Historic Investors VI, with the result that the four directors selected by the Debtor effectively controlled the board of directors of the Association after the Debtor acquired ownership of the units in the Locke Mill condominium complex. One of the witnesses who testified at the hearing was Terry Moss, who testified that he had been a director since the Association was formed in 1987. Mr. Moss could not recall a single instance in which the Board had voted down a proposal or motion brought forward by the directors selected by Diversified Historic Investors VI or the directors selected by the Debtor.

The bylaws provide that the directors may exercise any powers necessary and proper for the government and operation of the Association as well as all powers that may be exercised in North Carolina by legal entities of the same type as the Association. Since the formation of the Association, the board of directors has exercised the powers granted under the bylaws and have made the important decisions regarding the property and affairs of the Association. The result has been that control of the board of directors of the Association has amounted to control of the Association. From the time that Diversified Historic Investors VI purchased its 83 units in the Locke Mill condominium complex until the present, the matters brought before the board of directors and the decision of the board with respect to such matters have been determined and controlled by the directors designated by Diversified Historic Investors VI, while it owned the 83 units, and thereafter, by the directors designated by the Debtor.

## DISCUSSION

The court may confirm a plan if the requirements of § 1129(a) are met. One of these requirements is the requirement under § 1129(a)(8) that each impaired class under the plan accept the plan. Subsection (b) of § 1129 permits the court to confirm the plan under the conditions prescribed in subsection (b) even though the requirements of § 1129(a)(8) have not been satisfied. However, before the court can proceed under subsection (b) of § 1129, all of the other requirements in § 1129(a) must be met other than the requirement that all impaired classes have accepted the plan. *See In re 1000 International Bldg. Associates,* 81 B.R. 125, 127 (Bankr.S.D.Fla.1987); *In re Heights Ban Corp.,* 89 B.R. 795, 798 (Bankr.S.D.Iowa 1988). It is the position of the Holbrooks that the plan in this case cannot be confirmed now nor crammed down because the requirement in § 1129(a)(10) that at least one impaired class have accepted the plan, determined without including the acceptance of the plan by any insider, has not been met. The issue presented for determination is whether the plan in this case has been accepted by a class of claims that is impaired under the plan, determined without including any acceptance of the plan by any insider.

■ As the proponent of the plan and the party seeking confirmation, the Debtor has the burden of showing that the plan complies with the statutory requirements for confirmation. *In re Rusty Jones, Inc.,* 110 B.R. 362 (Bankr.N.D.Ill.1990). This burden of proof on the part of the debtor applies to all of the requirements of § 1129(a), including § 1129(a)(10). *See In re Washington Associates,* 147 B.R. 827 (E.D.N.Y.1992). The appropriate standard of proof required of the debtor in a Chapter 11 confirmation hearing is proof by a preponderance of the evidence rather than any enhanced or increased burden of proof. *Matter of Briscoe Enterprises, Ltd., II,* 994 F.2d 1160 (5th Cir.1993). In the present case, this means that the Debtor has the burden of showing by a preponderance of the evidence that the claim of the Association is impaired under the plan, that the Association has accepted the plan and that the Association is not an insider.

The plan recites that the claim of the Association is impaired and this assertion of impairment by the Debtor has not been disputed by the Holbrooks or any other creditor. Based upon the provisions of the plan and the evidence offered at the hearing, the court accepts that the claim of the Association is impaired under the plan. Further, the court finds that the Association accepted the plan. In that regard, the Debtor offered into evidence without objection the ballot which was submitted on behalf of the Association in which the Association accepted the plan. Although the circumstances and authority under which the ballot was signed on behalf of the Association is not entirely clear, no assertion has been made that the ballot does not constitute authorized and binding action of the Association and the court will accept the ballot as proof that the plan was accepted by the Association.

This leaves unanswered only the question of whether the Association is an "insider" within the meaning of § 1129(a)(10). The inquiry here must begin with § 101(31) of the Code which defines the meaning of "insider" for purposes of Title 11. This statutory definition provides that an insider "includes" the persons and entities thereafter specifically described in § 101(31). If the debtor is a partnership, then under § 101(31)(C), an "insider" includes a general partner in the debtor; a relative of a general partner in, general partner of or person in control of the debtor; partnership in which the debtor is a general partner; general partner of the debtor; or person in control of the debtor. The evidence established that the Association does not fall within any of these categories.

■ However, under § 101(31)(E), an "insider" also includes an "affiliate" of the debtor. In their objection, the Holbrooks assert that the Association is an "affiliate" and hence, must be regarded as an insider. In order to deal with this contention, reference must be had to § 101(2) which defines an "affiliate" for purposes of Title 11. Under this definition, affiliate "means" the entities and persons specifically described, including, under § 101(2)(B), "*corporation* 20 percent or more of whose outstanding *voting securities* are directly or indirectly owned, con-

trolled, or held with power to vote, by the debtor...." (Emphasis supplied). It is this portion of the definition of "affiliate" which the Holbrooks contend is applicable to the Association. The Debtor counters with the argument that the Association does not fall within this definition because the Association is a non-profit corporation, has not issued any "voting securities" and the Debtor holds no "voting securities" issued by the Association. In dealing with these conflicting positions, the court first will look to the specific language contained in § 101(2). The language of § 101(2)(B) itself does not reflect an exclusion of non-profit corporations from the definition. Rather, the statute uses the word "corporation" without any limitation. Had Congress intended to exclude non-profit corporations it would have been a simple matter to refer to "business corporation" in the definition which, of course, was not done. Further, the reference to "voting securities" in § 101(2)(B) does not exclude non-profit corporations from the definition, not even those non-profit corporations which, as in North Carolina, cannot issue capital stock. *See* N.C.Gen.Stat. § 55A–6–21. Since the reference in § 101(2)(B) is to voting "securities", reference must be had to § 101(49) which provides a statutory definition for "security." Section 101(49)(A) provides that a security "includes" the items and interests thereafter described. This use of "includes" means, of course, that the definition is not all inconclusive and that "securities" are not limited to those items and interests specifically described in § 101(49). *See* 11 U.S.C. § 102(3). The things described in § 101(49)(A) are not limited to written documents such as a stock certificate evidencing shares in a business corporation. Rather, the definition includes, for example, the interest of a limited partner in a limited partnership, which is not generally evidenced by a separate certificate apart from the partnership agreement. Hence, under § 101(49), a "security" is not limited to just written documents such as a stock certificate in a business corporation or a bond or debenture. Additionally, § 101(49)(B) describes a category of documents and interests which are *not* a "security" for purposes of Title 11. This provision contains no reference to non-profit corporations nor to memberships or other rights in non-profit corporations. Reading § 101(2) and § 101(49) together, the court concludes that a "voting security" within the meaning of § 101(2)(B) is not limited to instances in which an actual paper writing has been issued by the corporation evidencing the right to vote. Instead, the court believes that the definition in § 101(2)(B) is broad enough to encompass the situation involved in the present case in which the members of a non-profit corporation, based upon the articles of incorporation, bylaws and declarations of the non-profit corporation, are entitled to vote on the election of directors and on other matters involving the property and affairs of the corporation. In such a situation there are voting rights or interests through which the property, affairs and business decisions of the corporation are controlled just as surely as if separate voting certificates or securities had been issued to the members. A member of a non-profit corporation who holds 20 percent of these voting rights or interests has the same degree of control over his or her corporate entity as does the shareholder in a business corporation who holds 20 percent of the voting securities of that corporation. For purposes of deciding who is an "insider," where the focus is upon the relationship of two persons or entities and the extent to which that relationship gives rise to control, there is no reason to treat the two situations any differently and the court will not do so in this case.

In order to complete the determination of whether the Association is an "affiliate" of the Debtor, an examination of the Debtor's voting rights or interests in the Association must be made to see if the Debtor holds 20 percent or more of such voting rights or interests. The outstanding and eligible votes in the Association are 185, since there are 185 units in the complex and each unit has one vote. As the owner of 83 units the Debtor holds and controls 44.9 percent of the total votes. For purposes of electing directors, the Debtor has an even stronger position, since its ownership of 78 residential units enables the Debtor to elect 4 out of the 8 directors on the board. Whether considered from the standpoint of total votes or election of directors by class, it is clear that

the Debtor holds and controls considerably more than 20 percent of the voting rights of the Association. Therefore, the court has concluded that the Association is an "affiliate" of the Debtor within the meaning of § 101(2) and hence an "insider" of the Debtor pursuant to § 101(31).

Even if the Association were not an "affiliate" and therefore within the specific definition contained in § 101(31), it nonetheless would have to be regarded as an "insider" for purposes of § 1129(a)(10). Because § 101(31) provides only that an insider "includes" those persons and entities described therein, it is well established that the list of insiders contained in the statute is nonexclusive. *E.g., Matter of Missionary Baptist Foundation of America,* 712 F.2d 206, 210 (5th Cir.1983); *In re River Village Associates,* 161 B.R. 127 (Bankr.E.D.Pa.1993); *In re Heights Ban Corp.,* 89 B.R. 795 (Bankr. S.D.Iowa 1988).

■ The word "insider" should be applied flexibly to include a broad range of parties who have a close relationship with the debtor. This is supported by the legislative history of § 101(31):

> "The legislative history of Section 101(30)(B) [now (31)] states that '[a]n insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor'. S.Rep. No. 95–989, 95th Cong. 1st Sess. 25, reprinted in 1978 U.S.Code Cong. and Admin.News 5787, 5810. Persons not specifically defined but of similar type also can be insiders."

*In re Heights Ban Corp., supra* at 795. *See also In re Ingleside Associates,* 136 B.R. 955, 961 (Bankr.E.D.Pa.1992).

In deciding whether the relationship with the debtor is such that a party should be regarded as an insider, one of the controlling considerations is the relative degree of control which either has over the other. *In re Gilbert,* 104 B.R. 206 (Bankr.W.D.Mo.1989). For purposes of deciding whether an entity is an insider of the debtor it is not necessary that the debtor have actual control in the sense of legal decision making power. *In re Allegheny International, Inc.,* 118 B.R. 282

(Bankr.W.D.Pa.1990). Instead, it is sufficient if the debtor exercises *significant* influence over the business or decisions of the entity in question. If so, such entity is an "insider" of the debtor. *See In re Allegheny International, Inc., supra; In re Ingleside Associates, supra;* and *In re River Village Associates, supra.* This determination of insider status should be made as of the time the vote is taken and should be determined on a case-by-case basis. *In re Gilbert, supra; In re Featherworks Corp.,* 25 B.R. 634, 640 (Bankr.E.D.N.Y.1982), *aff'd* 36 B.R. 460, 464 (E.D.N.Y.1984).

In the present case the evidence established both that the Debtor was in a position to exercise significant influence over the Association and that the Debtor, in fact, did so. The Debtor has 44.9 per cent of the voting rights in the Association and over 50 percent of the voting rights in the class of members that elect 4 out of the 8 directors on the Association's board of directors. Diversified Historic Investors VI and the Debtor consistently have exercised their voting rights regarding the election of directors. Most of the significant decisions regarding the Association are made by its board of directors, such that control over the board of directors amounts to control of the Association. Of the 8 directors on the board during this reorganization case, 4 were elected by the Debtor. Before that, the Debtor's predecessor in interest, Diversified Historic Investors VI, had elected 4 out of 8 directors. The emergence of the Debtor in 1994 signaled little change regarding management and control since the Debtor is 99% owned by Diversified Historic Investors VI.

The evidence also showed that the directors selected by the Debtor and Diversified Historic Investors VI were able to control the board and hence the Association. These directors consistently selected one of their number to be president. These directors consistently acted in concert and voted together as a block vote. They were the ones who set the agendas for the meetings of directors and initiated most of the matters that came before the board. Through their cohesiveness, assertiveness and willingness to create a deadlock rather than lose the

vote, the directors selected by Diversified Historic Investors VI and the Debtor, effectively, controlled the outcome of the decisions made by the board. The one director who testified could not recall a single instance in which the directors selected by Diversified Historic Investors VI and the Debtor had not prevailed on a vote taken by the board. This influence and control by the directors selected by the Debtor in this case is imputable to the Debtor, since it is a reasonable inference that the directors selected by the Debtor act at the direction of the Debtor as the party who placed them on the board. This is particularly true in the absence of any evidence from the Debtor, the party with the burden of proof, that its directors did not answer to the Debtor and were not subject to direction from the Debtor. The bottom line is that the evidence established that Diversified Historic Investors VI and the Debtor have controlled the Association through the directors which they have selected and placed on the Association's board of directors. This was the situation at the time that the Association accepted the Debtor's plan.[1] This means that the Association was an insider at that time, with the result that the acceptance of the plan by the Association does not satisfy the requirements of § 1129(a)(10). The Debtor's plan therefore is not confirmable. An order will be entered contemporaneously herewith sustaining the Holbrooks' objection to the plan on the grounds that the plan does not meet the requirements and denying confirmation of the Debtor's plan.

---

1. The ballot from the Association purportedly accepting the Debtor's plan was executed on behalf of the Association and returned to the court without even consulting at least one of the directors not elected by the Debtor.