**In re DUNES HOTEL ASSOCIATES, a South Carolina general partnership, Debtor.**

**Bankruptcy No. 94–75715.**

United States Bankruptcy Court, D. South Carolina.

Sept. 21, 1995.

Julio E. Mendoza, Jr., Columbia, SC, John J. Dawson, Phoenix, AZ, for Debtor.

Michael M. Beal, Columbia, SC, Claude D. Montgomery, New York City, for SC Hyatt Corporation.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER is before the Court upon (a) the Objection filed on April 13, 1995 by SC Hyatt Corporation ("Hyatt" or "SC Hyatt") to Wolf Block Schorr & Solis–Cohen's ("Wolf Block") proof of claim which was filed on March 20, 1995 in the amount of $2,139.57 (the "Objection") and (b) the Debtor's Motion for Temporary Allowance of Claim Asserted by Wolf Block filed on August 28, 1995 (the "Motion"). The Court conducted a hearing (the "Hearing") on the matters on September 7, 1995. After consideration of the pleadings before the Court, the prior Orders of this Court[1], the evidence introduced at the Hearing, the evidence that previously has come before this Court in this case[2], and arguments of counsel, this Court

makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

This Court incorporates the findings of fact made in the Hyatt Order and the Order of this Court dated September 20, 1995 regarding artificial impairment. Certain of those facts are repeated here for convenience and certain additional factual findings are made to the extent this Court regards them as material.

1. On November 18, 1994 (the "Petition Date"), Dunes Hotel Associates ("Dunes" or the "Debtor") commenced the above-captioned case under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code")[3] and has remained a debtor in possession pursuant to §§ 1107 and 1108.

2. Dunes is a South Carolina general partnership which was formed in 1972 and has its principal place of business in Stamford, Connecticut.

3. The general partners of Dunes are Andrick Hotel Corporation ("Andrick") and Meyers Enterprises, Inc. ("Meyers"), wholly-owned subsidiaries of Pension Holding Corporation, which itself is a wholly owned affiliate of the General Electric Pension Trust ("GEPT"). GEPT is a common law trust organized under the laws of the State of New York, which manages and controls an asset portfolio of approximately $30 billion dollars and is one of the largest pension trusts in the United States.

4. Dunes' primary asset is the real property, improvements and personal property which comprise the 505–room resort/convention hotel commonly known as the Hyatt Regency Hilton Head or the Hyatt on Hilton Head Island (the "Hotel"), Hilton Head Is-

---

1. These Orders include, the Order dated August 25, 1995 entered in *Dunes Hotel Associates v. Hyatt Corporation, et al.,* Adv.Pro. No. 95–8042 (the "Hyatt Order") and the Order dated May 31, 1995, and entered in the above captioned chapter 11 case, which denied Aetna Life Insurance Company's ("the Aetna Order") and Hyatt's Motion to Dismiss the Debtor's bankruptcy case (the "Dismissal Order") and the Order dated September 20, 1995 (the "September 20, 1995 Order").

2. References herein to testimony and trial exhibits refer to the testimony and exhibits introduced by Aetna, SC Hyatt or the Debtor during the course of the hearing (the "Dismissal Hearing") held on April 11–12, 1995 and May 8, 1995 in respect to the motions filed by Aetna and Hyatt to dismiss the Debtor's bankruptcy case.

3. Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.,* shall be by section number only.

land, Beaufort County, South Carolina (said real property, improvements and personal property, including, without limitation, the Hotel are hereinafter collectively referred to as the "Hotel Property").

5. SC Hyatt occupies the Hotel Property and operates the Hotel pursuant to the Agreement and Lease dated November 2, 1973 (as subsequently amended, the "Agreement and Lease" or "Lease" or "SC Hyatt Agreement") between Dunes and Hyatt Corporation. Hyatt Corporation subsequently assigned its rights under the Agreement and Lease to SC Hyatt, which assignment the Debtor acknowledged pursuant to the amendment to the Agreement and Lease, dated January 19, 1976. SC Hyatt asserts a leasehold interest in the Hotel Property.

6. On or about December 15, 1995, the Debtor filed its original Chapter 11 schedules and statements which listed only one creditor—Aetna Life Insurance Company ("Aetna"). In those schedules, the Debtor stated that certain tax and trade creditors' claims may be asserted against it, but all such claims were the responsibility of and assertable only against SC Hyatt.

7. On or about February 12, 1995, Aetna filed a motion to lift the stay or to dismiss the Debtor's bankruptcy case. On February 21, 1995, Hyatt also filed a motion to dismiss the Debtor's bankruptcy case or in the alternative terminate exclusivity. The primary basis for dismissal alleged in each motion was the asserted futility of reorganization given the Debtor's lack of creditors other than Aetna and Hyatt. In addition, Aetna and Hyatt asserted the petition was filed in order to increase, rather than preserve, the equity of the Debtor's owners in the Hotel Property at these creditors' expense, which they characterized as subjective bad faith. Both Aetna and Hyatt asserted that they would not vote for any plan of reorganization which sought to limit or modify their rights for the benefit of the Debtor's ultimate equity holders, and that in the absence of any consenting creditors, the Debtor's reorganization was futile because it could not satisfy § 1129(a)(10).

8. As part of its response to such motions, the Debtor attempted to find or create a creditor capable of being impaired other than Aetna and Hyatt. Approximately one week prior to the proof of claim bar date and subsequent to the filing of the Aetna Dismissal Motion and the SC Hyatt Dismissal Motion, Debtor's bankruptcy counsel called Alvin H. Dorsky, senior partner in Wolf Block, to inquire whether Wolf Block was owed any money by the Debtor. Upon discovering certain unreimbursed expenses Mr. Dorsky and Debtor's bankruptcy counsel, John J. Dawson, discussed the filing of a proof of claim. Mr. Dorsky asked Mr. Dawson to "tell me exactly what he wanted." In response, on March 16, 1995, Mr. Dawson, the bankruptcy counsel for the Debtor, sent a memorandum to Mr. Dorsky, wherein he requested that Mr. Dorsky "provide a bill for your law firm's unpaid expenses to Dunes Hotel Associates in care of the Trustees of General Electric Pension Trust ... and ... file a claim for these unpaid expenses in the Debtor's Chapter 11 case." In accordance with these instructions, Wolf Block prepared and issued a bill dated March 16, 1995 to "Dunes Hotel Associates c/o Trustees of General Electric Pension Trust" in the amount of $2,139.57.

9. On March 20, 1995, Wolf Block, with the assistance of the Debtor's bankruptcy counsel, filed a proof of claim against the Debtor in the amount of $2,139.57 for alleged pre-petition expenditures attributable to unreimbursed expenses incurred in rendering legal services to the Debtor.

10. On or about April 7, 1995, on the eve of the Dismissal Hearing, the Debtor filed its First Amended and Restated Statement of Financial Affairs ("Amended Schedules"). The Amended Schedules list Wolf Block as an alleged, unsecured, prepetition creditor of the Debtor.

11. Wolf Block is a law firm that does a substantial amount of legal work for GEPT. In 1993 and 1994, it was paid approximately $2 million annually in respect of such work. The alleged basis for Wolf Block's claim against the Debtor is certain disbursements incurred in the period from June 1 through November 30, 1994 in connection with meetings with the Debtor's bankruptcy counsel.

The legal services giving rise to those disbursements previously had been billed to General Electric Investment Corporation ("GEIC") for services rendered to GEPT and were paid in full in January 1995.

12. Wolf Block has represented the interests of General Electric Pension Trust and a number of its affiliates and subsidiaries, including Andrick Hotel Corporation and Meyers Enterprises, Inc., the general partners of Dunes Hotel Associates, for many years, even prior to the development of the Hotel Property.

13. Mr. Dorsky's testimony is that Wolf Block has represented Dunes since its formation, primarily in developmental and operational matters. However, in the months preceding Dunes filing its chapter 11 petition, Mr. Dorsky participated in a series of meetings to discuss the filing of a Chapter 11 case. Subsequent to the voluntary petition, Mr. Dorsky has continued to play a part in the proceedings by advising GEPT, the ultimate beneficial owner of the Debtor, decision maker, and sole plan funder for the Debtor, regarding the impact of the bankruptcy proceedings. Significantly, Mr. Dorsky was included in the internal discussions about whether the adversary proceeding to avoid SC Hyatt's leasehold interest should be filed against SC Hyatt.

14. The issuance of a bill by Wolf Block to Dunes Hotel Associates, as opposed to GEPT, is contrary to Wolf Block's past practice of billing GEIC "for services rendered to General Electric Pension Trust ... with respect to the Hyatt Hotel, Hilton Head, South Carolina." In fact, Wolf Block's legal services, in respect of which the expenses described in Wolf Block's March 16, 1995 bill were incurred, were billed by Wolf Block in December 1994 to GEIC "for services rendered to General Electric Pension Trust from June 1, 1994, through November 30, 1994 with respect [sic] Hyatt Hotel, Hilton Head, South Carolina, including disputes with Hyatt and Aetna, Chapter 11 filing, etc." This invoice was paid by GEPT in the usual course of its business in January 1995, approximately two months after the filing of Dunes' petition for relief on November 18, 1994.

15. Wolf Block's bills for legal services allegedly rendered in connection with this matter, as well as other GEPT investments, are paid from a central General Electric disbursing account. Wolf Block does not maintain a separate client identification number for Dunes but, instead, classifies Dunes with a matter number under the GEPT client number. Indeed, Mr. Dorsky testified that Wolf Block represented GEPT subsequent to the filing of the Debtor's petition in connection with the Debtor's bankruptcy case and continued to bill GEPT under the same client and matter number as it had prior to the filing of the petition when it purported to be representing Dunes.

16. Mr. Dorsky, the attorney at Wolf Block primarily responsible for the GEPT relationship, reviewed the Debtor's original schedules prior to the schedules being filed and offered no comment concerning Wolf Block's omission from the creditor's list. Mr. Dorsky remains on the distribution list for reviewing documents filed by the Debtor.

17. Aetna and SC Hyatt contend (and the Debtor disputes) that Wolf Block is not a creditor of the Debtor, because the client it represents and bills is GEPT. Moreover, SC Hyatt contends that Wolf Block is an insider of the Debtor, or at a minimum, an agent of an insider and thus its ballot should not be counted for purposes of confirmation, specifically § 1129(a)(10).

18. On April 3, 1995, Aetna made a written offer to purchase the Wolf Block claim for 200% of the face amount of the claim, in order to test the *bona fides* of the Wolf Block claim. Wolf Block refused the Aetna offer.

19. At the September 7, 1995 hearing, the Court inquired of Mr. Dorsky of Wolf Block whether Wolf Block had any new evidence to submit to the Court concerning the validity of its claim against the Debtor. Mr. Dorsky stated he had no further evidence to submit. Moreover, Mr. Dorsky indicated that he had no objection to the Court proceeding on the issue of Hyatt's Objection to Wolf Block's claim and consented to the procedure whereby SC Hyatt and the Debtor and Wolf Block, either jointly or separately, would submit proposed orders in support of their argu-

ments. Wolf Block later submitted a Declaration of Alvin H. Dorsky, a member of Wolf Block, in support of the Wolf Block claim on September 15, 1995 which represented additional testimony regarding its claim and other issues.[4]

20. The Wolf Block claim, if a true claim, could have easily been paid and ordinarily would have been paid by the funds from the operations of the Hotel Property or it would be paid from the equity in the Hotel Property. The Debtor knew that Wolf Block would vote in favor of the Debtor's Plans, and Wolf Block has in fact done so. Further at the Dismissal Hearing, Mr. Dorsky testified that: "I don't think the debtor has to tell me what would be in *its* best interests should this matter come to a vote." (emphasis added).

21. As this Court stated in the Hyatt Order, the Wolf Block claim appears either artificially created or preserved by the Debtor for purposes of its bankruptcy case.

22. Wolf Block has a close relationship with the Debtor and its ultimate parent GEPT which exceeds that of a normal arms length relationship between an attorney and client in relation to events surrounding this bankruptcy case. Wolf Block as a primary counsel for GEPT, the parent and sole funding agent for the Debtor's confirmation, appears to be acutely involved in efforts by the Debtor and GEPT to avoid the SC Hyatt Agreement and restructure the Aetna indebtedness through the Debtor's bankruptcy case. Wolf Block participated in the meetings regarding the planning of and decision to file the bankruptcy case and has consulted with and represented the Debtor's beneficial owner, GEPT, both prior to and since the filing of the bankruptcy case. Wolf Block asserted a claim against the Debtor in the manner suggested by and upon the request

of Debtor's bankruptcy counsel and refused an offer of payment exceeding the claim amount. Wolf Block knowingly consented to impairment of its alleged claim solely for the purpose of casting an acceptance in order for the Debtor to achieve confirmation and thereby its desired restructuring of its primary secured debt. Wolf Block has indicated a loyalty to the goals and purposes of the Debtor and GEPT in the bankruptcy case. In utilizing its claim to be the key and essential vote to achieve confirmation, Wolf Block has willingly become the instrumentality of both the Debtor and GEPT. As such Wolf Block is significantly influenced by both the Debtor and GEPT as would affect its actions as a creditor. As such, Wolf Block is an insider of the Debtor.[5]

## CONCLUSIONS OF LAW

### I. THE WOLF BLOCK CLAIM IS DISALLOWED FOR VOTING PURPOSES

 Generally, a properly filed proof of claim is entitled to a presumption of *prima facie* validity, and the party objecting to the proof of claim bears the initial burden of producing evidence to defeat the claim. *See, e.g., In re Mission of Care, Inc.,* 164 B.R. 877 (Bankr.D.Del.1994); *In re J. Bildner & Sons,* 106 B.R. 8 (Bankr.D.Mass.1989). However, where a claim is asserted by an insider, and where the transaction giving rise to the claim is challenged, it is well-settled that the burden is on the insider-claimant to show the inherent fairness and good faith of the transaction. *In re All–American Auxiliary Assoc.,* 95 B.R. 540, 544 (Bankr.S.D.Ohio 1989); *In re Marquam Investment Corp.,* 942 F.2d 1462, 1465 (9th Cir.1991). In addition, a proof of claim is allowable only if it is enforceable against the Debtor. *In re Dan–Ver Enterprises, Inc.,* 86 B.R. 443 (Bankr.

---

4. The Court's consideration of the Declaration is without ruling on the propriety or appropriateness of the submission of additional evidence without SC Hyatt's opportunity to cross examine. Such a Declaration was not requested nor authorized by the Court.

5. At the hearing on the Dismissal Motions, and in an additional Declaration filed with the Court on September 15, 1995, Alvin H. Dorsky, as senior partner of Wolf Block, testified that its claim was valid, accurate, and attributable to the Debtor

and disputed that the claim was either artificially created or maintained or that Wolf Block was an insider of the Debtor. However, despite this testimony (which this Court notes ultimately serves the interests of Dunes and GEPT), the Court believes that the more credible evidence indicated by the totality' of the circumstances, testimony and course of conduct of these parties indicates the insider nature of Wolf Block's relationship to the Debtor. The Court finds such evidence to be more credible and convincing.

D.Pa.1988). As discussed hereafter, Wolf Block is an insider of the Debtor and an agent of GEPT which is an insider, and as such, cannot be permitted to vote as the sole member of Class 7 under § 1129(a)(10) and § 1129(a)(3). Wolf Block's claim is a claim against GEPT, and should be disallowed because it is not properly assertable against the Debtor.

### A. *Wolf Block is an Insider of the Debtor.*

■ Section 101(31) includes a list of insiders of a debtor partnership. However, § 102(3) states that "includes" is not limiting. Section 101(31) is not exclusive. *In re Locke Mill Partners,* 178 B.R. 697, 702 (Bankr. M.D.N.C.1995). "The word 'insider' should be applied flexibly to include a broad range of parties who have a close relationship with the debtor." *Id.* The legislative history of § 101(31) indicates that "[a]n insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." *In re Sky Valley, Inc.,* 135 B.R. 925, 934 (Bankr.N.D.Ga.1992) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 312 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 25 (1978) U.S.Cong. & Admin.News 1978 pp. 5787, 5810, 6269) (finding that an adviser to the debtor who made recommendations to the debtor and implemented the efforts to execute them was an insider for purposes of hiring a professional). The determination of whether a person is an insider is a factual determination to be made on a case-by-case basis. *In re Locke Mill Partners,* 178 B.R. at 702.

"In deciding whether the relationship with the debtor is such that a party should be regarded as an insider, one of the controlling considerations is the relative degree of control which either has over the other." *In re Locke Mill Partners,* 178 B.R. at 702. Based on the aforestated findings of fact, it is clear that Wolf Block and Mr. Dorsky enjoy a long and close relationship with both the Debtor and GEPT and that Wolf Block's involvement in this bankruptcy case goes beyond that of the normal attorney client relationship or arms length relationship between a debtor and its creditors. It is precisely the kind of close relationship that appears to be covered by the statutory definition of insider.

■ Further, at the Dismissal Hearing, Mr. Dorsky responded to a question concerning his loyalty to the Debtor and to any requests the Debtor made regarding how Wolf Block should vote on the Debtor's plan of reorganization, "I do not think that the debtor has to tell me what would be in *its* best interests should this matter come to vote." Such a statement demonstrates the need to closely scrutinize the role of such a potential insider in determining whether the requirements of § 1129(a)(10) have been met. Section 1129(a)(10) is designed to prevent cramdown from being triggered unless a legitimate creditor, who is affected by the plan of reorganization, finds the plan's treatment of that creditor's claim acceptable. *In re Windsor on the River Assoc., Ltd.,* 7 F.3d 127, 131 (8th Cir.1993) (quoting *In re Lettick Typografic, Inc.,* 103 B.R. 32, 38 (Bankr. D.Conn.1989). It is clear to this Court that Wolf Block's greater concern in this case is for the best interests of the Debtor and GEPT and not its own financial interests as an independent creditor.[6]

---

**6.** The Debtor has argued that it displays merely a normal loyalty to its clients and its desire to support the Debtor is no different than that of trade vendors or suppliers who wish to continue doing business with the debtor. The Court is unpersuaded by this argument. Unlike a trade vendor or supplier, an attorney-client relationship is a fiduciary relationship governed by certain rules of conduct. Arguably, Wolf Block could not oppose the Debtor's plan and maintain its fiduciary responsibilities to its clients (Dunes and GEPT). However, Wolf Block's involvement in this case goes beyond the usual attorney client relationship. Further, trade vendors and suppliers do not review bankruptcy pleadings prior to

their filing or participate in meetings to determine how the Debtor should proceed. Trade vendors and suppliers also do not counsel and advise the ultimate decision maker and plan funder and beneficial owner for the Debtor. This is a unique position in that Wolf Block purports to give privileged advice to GEPT and the Debtor which advice they act upon and Wolf Block implements by its vote. Its *sui generis* nature distinguishes it from a mere friendly trade vendor or supplier. In drawing these conclusions, the Court is not implying any ethical violations or improper course of conduct on the part of Wolf Block; however, they should not be able to be

While Wolf Block is not the law firm in the forefront in representing the Debtor in this Chapter 11 proceeding, there is little doubt that Wolf Block continues to play a significant role in the bankruptcy case as a functional insider through its input with the Debtor and GEPT in reviewing bankruptcy documents, its participation in making decisions on how the Debtor should proceed and its continued advice to GEPT, the ultimate decision maker and beneficial owner of the Debtor and on which the Debtor's plans for reorganization are totally dependent. *See In re Rimell*, 111 B.R. 250, 254 (Bankr.E.D.Mo. 1990) (stating that "[b]oth the statute and its legislative history indicate that an insider may be someone who currently enjoys a fiduciary relationship with the debtor ... Certainly an attorney, who invariably acquires confidential client information and whose relationship is governed by rules of professional conduct, may come under this categorization."), *aff'd*, 121 B.R. 253, *aff'd*, 946 F.2d 1363, *cert. denied*, 504 U.S. 941, 112 S.Ct. 2275, 119 L.Ed.2d 202. Thus, Wolf Block's claim must be disallowed for purposes of counting its ballot under § 1129(a)(10) and § 1129(a)(3).

### B. *Wolf Block is the Agent of an Insider.*

Section 101(31) includes as an insider of a debtor partnership a "person in control of the debtor" or an "insider of an affiliate". § 101(31)(C)(v), (E). GEPT owns Pension Holding Corporation which owns Andrick and Meyers, the Debtor's only two general partners. The Debtor's designated representative testified that GEPT is the ultimate decision maker of the Debtor. GEPT's role is most significant in this bankruptcy case, for without its funding the Debtor cannot confirm the Initial Plan or Conditional Modification. GEPT is the ultimate beneficiary of the Debtor's efforts to preserve or create equity in the Hotel Property and to avoid the SC Hyatt Agreement. GEPT is unquestionably an insider of the Debtor.

Wolf Block's relationship with the General Electric Pension Fund began in the early 1970s. In 1994, GEPT paid approximately $2 million to Wolf Block for legal services and while possibly not the firm's largest client, still it is undoubtably a significant and important client. The Debtor's witnesses also testified that subsequent to the Debtor filing its bankruptcy petition, Wolf Block advised the trustees of GEPT on the bankruptcy case, including GEPT's role in the bankruptcy case. Given both the current and historical attorney client relationship with GEPT, Wolf Block has a fiduciary relationship with GEPT regarding this bankruptcy case.[7]

■ This Court has broad discretion in determining who is an insider. Here, equity and the statute demand that Wolf Block's ballot shall have no effect on these proceedings. Given the insider status of GEPT as both a central party and an affiliate of the Debtor and Wolf Block's role as an attorney agent of GEPT, Wolf Block's claim must be disallowed.

Wolf Block, through the testimony of Mr. Dorsky on May 8, 1995 and through a Declaration of Alvin H. Dorsky filed on September 15, 1995, asserts that Wolf Block's claim is valid, true and properly filed against the Debtor. In his Declaration, Mr. Dorsky further denies an insider relationship and denies that Wolf Block's claim was artificially created or preserved for purposes of the bankruptcy case. However, this Court must weight that testimony in light of the conflicting evidence demonstrated by the totality of the testimony and circumstances surrounding Wolf Block's relationship with Dunes and GEPT. This Court believes that the totality of circumstances, course of conduct and the weight of the credible evidence indicates that Wolf Block is an insider of the Debtor; a party whose close relationship and actions relating to the bankruptcy case indicate more than an arms length or usual relationship between a client and its attorney and a party which has a significant degree of influence

---

paid the amounts represented by their proof of claim from the bankruptcy estate.

7. As discussed previously, Mr. Dorsky was one of a small group of individuals who participated in the decision to file the bankruptcy petition and the adversary proceeding against SC Hyatt.

over, and is itself controlled by the Debtor, through its ultimate beneficial owner, GEPT.

In this Court's view, Wolf Block participated to a significant degree in both the filing and conduct of the bankruptcy case and, through its close relationship with the Debtor and GEPT, recognized the importance of and, in fact, willingly allowed itself to be used as the means of providing the critical vote necessary for compliance with the requirements of § 1129(a)(10).[8]

In response to the Objection to Claim, the Debtor primarily relies on *In re 7th Street and Beardsley Partnership*, 181 B.R. 426 (Bankr.D.Ariz.1994) for a determination that a professional (an accountant) which had worked for the Debtor was not an insider. However, the Court in *7th Street and Beardsley* made two important factual determinations which distinguish that case from the case at hand: In *7th Street and Beardsley*, the Court found that the accountant "did not participate in the formulation of the Plan ... and has not participated in the bankruptcy in any other way", and that the general partner of the Debtor had not contacted the accountant regarding its vote for the Plan. *In re 7th Street and Beardsley*, 181 B.R. at 430.

### C. *The Wolf Block Claim is Disallowed in its Entirety Because it is Not an Obligation of the Debtor.*

■ As discussed above, Wolf Block is an insider of the Debtor. As such, the burden is on the insider to prove not only "... the good faith of the transaction but also to show the inherent fairness from the viewpoint of the corporation and those interested therein." *Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939). An insider's dealings are subject to rigorous scrutiny. *In re Marquam Inv. Corp.*, 942 F.2d at 1465 (quoting *Pepper v. Litton*, 308

U.S. at 306, 60 S.Ct. at 245). Wolf Block has failed to demonstrate that it has a valid claim against the Debtor.[9]

The evidence before the court indicates that the only documentation supporting Wolf Block's proof of claim is the bill to Dunes which was not consistent with its prior billing practice. Wolf Block's claim was filed on March 20, 1995 in the amount of $2,139.57. Mr. Dorsky testified that these expenses were incurred at various time periods while he was rendering legal services to Dunes, but also at a time when he represented GEPT and many of its other affiliates and subsidiaries. In December 1994, a bill was sent to GEIC for legal services rendered to GEPT and paid directly by GEPT in January 1995. There is no credible evidence that GEPT has actually sought reimbursement from Dunes or debited Dunes in any way for the fees paid to Wolf Block.[10] It appears that the subject legal services and expenses were as much for the benefit of GEPT as for Dunes directly. The relationship between the Debtor, Wolf Block and GEPT, taken in light of the evidence described in this Order, indicate that Wolf Block has not and cannot meet its burden to show that at the time it incurred the subject expenses that it represented the interests of Dunes as opposed to its client GEPT, or even if Dunes were the client, that Dunes was responsible for payment of these expenses. From this course of dealing, it is apparent that the reimbursements for which Wolf Block has asserted a claim against the Debtor would have, absent the involvement of the Debtor's bankruptcy counsel, been billed on the next billing date to GEPT and paid by GEPT. For all of these reasons, it appears that the Wolf Block claim is a claim against GEPT and not the Debtor. The Wolf Block claim in this bankruptcy case must be and hereby is disallowed in its entirety.

---

**8.** While some courts have referenced the technical nature of the requirements of § 1129(a)(10) and mentioned scholars and other groups that have suggested it be eliminated from the Bankruptcy Code, the fact is that it is presently part of the law and is a requirement for confirmation which applies to the case at hand, and therefore this Court will observe it.

**9.** Even if Wolf Block were not an insider, SC Hyatt has presented sufficient evidence to show that Wolf Block's claim is actually a claim against GEPT; thus, it is not a valid claim against the Debtor.

**10.** Michael Strone's testimony indicated that GEPT *usually* booked the payment to the appropriate affiliate.

1002

For the reasons given in this Order, the Debtor's Motion to temporarily allow the Wolf Block Claim is denied, and SC Hyatt's Motion to disallow that Claim is granted.

### CONCLUSION

Pursuant to all of the foregoing Findings of Fact and Conclusions of Law, the Court hereby sustains Hyatt's objection to the Wolf Block claim and denies the Debtor's Motion for Temporary Allowance of the Claim Asserted by the Wolf Block Law Firm. The Wolf Block claim filed on March 20, 1995 is disallowed in its entirety.

**AND IT IS SO ORDERED.**