In re John A. **REICHERT** and Zelma G. Reichert, Debtors.

**Bankruptcy No. HT 90–84841.**

United States Bankruptcy Court, W.D. Michigan.

March 13, 1992.

Paul I. Bare, Traverse City, Mich., for debtors.

Agnes M. Kempker–Cloyd, Grand Rapids, Mich., for the U.S./I.R.S.

Dean E. Rietberg, Grand Rapids, Mich., for the U.S. Trustee's Office.

## OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

This matter is before me on the motion of the United States to convert or dismiss the Debtors' Chapter 11 proceeding. A hearing was held on February 7, 1992. This Opinion embodies in written form my decision rendered at the February hearing and, for the reasons stated herein, the United States' Motion for Conversion or Dismissal is continued for further hearing.

My Opinion is limited in its scope. I have only decided, as a matter of law, how the Debtors must satisfy the different types of existing tax claims in their plan of reorganization in order to comply with the confirmation standard of 11 U.S.C. § 1129(a)(9)(C). Subsequent to this decision additional documentation and testimony will be needed regarding whether dismissal or conversion is warranted.

The Debtors, John A. Reichert and Zelma G. Reichert, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 31, 1990. Pursuant to Fed.R.Bankr.P. 3001 and 3003, the United States filed, through the Internal Revenue Service, a proof of claim for various taxes owed by the Debtors (hereinafter, the Movant will be referred to as the "Internal Revenue Service" or the "IRS"). The IRS claims the Debtors' are liable for delinquent income taxes as well as taxes under the Federal Insurance Contributions Act, I.R.C. §§ 3101–3128 (commonly known as

"FICA"), and under the Federal Unemployment Tax Act, I.R.C. §§ 3301–3311 (commonly known as "FUTA"). A significant portion of the Internal Revenue Service's claim for income, FICA and FUTA taxes is secured by tax liens obtained by the IRS prior to the onset of the Debtors' bankruptcy.

■ 11 U.S.C. § 1112 ultimately controls the disposition of the Internal Revenue Service's motion. Section 1112(b) states that the court may convert or dismiss a case under Chapter 11 for cause. A list of ten different reasons is then recited for court consideration in determining the existence of sufficient cause.[1] According to § 1112(b)(2)–(3), cause includes the inability to effectuate a plan of reorganization and the existence of unreasonable delay by the debtor that is prejudicial to creditors. The IRS contends that both of these reasons establish cause for conversion or dismissal of the Debtors.[2]

In its Motion for Conversion or Dismissal, the IRS argues that the Debtors will be unable to effectuate a feasible plan of reorganization based on the confirmation standard found in 11 U.S.C. § 1129(a)(9)(C). Before the Court can approve a plan of reorganization, § 1129(a)(9)(C) requires that certain tax debts, enumerated in 11 U.S.C. § 507(a)(7), be paid within six years of the date of assessment. The IRS maintains that the Debtors will be unable to propose a confirmable plan of reorganization due to the requirement of § 1129(a)(9)(C). As grounds for conversion or dismissal, the IRS contends that the payment period has almost expired and, since the Debtors will not have sufficient funds to pay off all of the Internal Reve-

---

1. The reasons provided are not exclusive. The court is given wide discretion in its determination of whether cause exists and may, in its equitable powers consider other factors in arriving at its decision. *See* S.Rep.No. 989, 95th Cong., 2d Sess. 117–118 (1978).

2. It is the ultimate decision of whether cause exists to support conversion or dismissal that is beyond the scope of this Opinion. Additional factual testimony is needed as to whether a feasible plan of reorganization is precluded or whether unreasonable and prejudicial delay has

occurred. I will require additional documentation of the dollar value of each type of claim possessed by the United States and testimony on the Debtors' financial ability to effectuate a plan of reorganization before making a final ruling on the United States Motion for Conversion or Dismissal. Further, my ruling does not encompass what is the proper standard for determining cause under § 1112. I have limited this Opinion only to the issue of how the Debtor must treat the tax claims of the IRS under § 1129(a)(9)(C).

nue Service's tax claims within the six year period, there is little possibility for a feasible plan of reorganization. According to the IRS, the short time period for payment required under § 1129(a)(9)(C) precludes the confirmation of a feasible plan of reorganization. Additionally, the IRS argues that cause for conversion or dismissal exists since the Debtors have caused unreasonable delay by failing to file a plan of reorganization.

The Debtors dispute whether the time limitation contained in the Bankruptcy Code for the payment of priority taxes is applicable to the claims possessed by the IRS. Arguing that federal unemployment taxes are not included under § 507(a)(7), the Debtors maintain that the time frame for payment contained in § 1129(a)(9)(C) is inapplicable to the Internal Revenue Service's claim for FUTA taxes. The Debtors also question whether there is any applicable time constraint on the payment of secured claims in a plan of reorganization. With the secured and FUTA tax claims outside the six year time limitation, the Debtors assert that a feasible and confirmable plan of reorganization can and will be proposed before any harm to creditors occurs.

11 U.S.C. § 1129 provides in part:

(a) The Court shall confirm a plan only if all of the following requirements are met:

. . . .

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

. . . .

(C) with respect to a claim of a kind specified in section 507(a)(7) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

Section 1129(a)(9)(C) specifically informs the court that § 507(a)(7) controls the types of claims falling under the six year requirement.

11 U.S.C. § 507(a)(7) establishes which expenses and claims receive priority payment when distributing funds from the bankruptcy estate. Section 507(a)(7) grants a seventh priority in payment to allowed unsecured claims of governmental units to the extent that such claims are encompassed within a litany of seven different categories.[3] In its responsive brief, the Debtors admit that the unsecured claim of the IRS for withholding taxes owing under FICA is subject to the six year requirement of § 1129(a)(9)(C). (Debtors'

---

**3.** 11 U.S.C. § 507 states in part:
(a) The following expenses and claims have priority in the following order:
(7) Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for—
(A) a tax on or measured by income or gross receipts—
(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
. . . .
(B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition;
(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;
(D) an employment tax on a wage, salary, or commission of a kind specified in para-

graph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;
(E) an excise tax on—
(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;
(F) a customs duty arising out of the importation of merchandise—
. . . .
(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

Mem.Br. at 2.) [4] The Debtors contend, however, that FUTA taxes and all taxes, whether FICA or FUTA, secured by a lien fall outside the list of categories contained in § 507(a)(7) and need not be paid within the six year time frame for a plan of reorganization to be confirmed.

The pertinent question to be decided is whether the Internal Revenue Service's secured claim for delinquent taxes and claim for taxes due under FUTA must be paid within six years from the date of assessment in the Debtor's plan of reorganization.

*Treatment of FUTA Taxes*

The Federal Unemployment Tax Act was originally part of the Social Security Act of 1935. The tax was developed to ease the burden of unemployment produced by the great depression. FUTA is an indirect excise tax levied upon an employer in the conduct of business based upon the total wages paid. *See St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981). Section 3301 of the Internal Revenue Code states:

> There is hereby imposed on every employer ... for each calendar year an excise tax, with respect to having individuals in his employ, equal to—
>> (1) 6.2 percent in the case of calendar years 1988 through 1995; or
>> (2) 6.0 percent in the case of calendar year 1996 and each calendar year thereafter;
> of the total wages ... paid by him during the calendar year with respect to employment.

█ FUTA taxes are assessed yearly against an employer. Money is not deducted from an employee's wages to pay FUTA taxes. The Debtors correctly conclude that FUTA is not a withholding tax, or trust fund tax, as is FICA, covered under § 507(a)(7)(C) of the Bankruptcy Code. Under FUTA, the amount of total wages paid by an employer determines his tax liability at the end of the calendar year.

█ The Debtors incorrectly argue that FUTA taxes are not encompassed within the broader definition of priority claims found in § 507(a)(7) of the Bankruptcy Code. Section 507(a)(7)(D) grants priority to the claim of a governmental unit, here, the IRS, for:

> an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition.

The legislative history summarizes that priority is granted, under what is now § 507(a)(7)(D), to the "employer's share of employment taxes on all wages earned and paid before the petition." S.Rep.No. 989, 95th Cong., 2d Sess. 68–72 (1978). The only condition found under § 507(a)(7)(D) is that the taxes must be due within three years of the date of filing the petition.

The Internal Revenue Service's unsecured claim for FUTA taxes merits priority under this subsection. The tax exacted by FUTA is an employment tax based on wages paid by the employer. This conclusion is evident from the nature of the tax and supported by the congressional determination to codify FUTA under Subtitle C of the Internal Revenue Code which is entitled, "Employment Taxes". Accordingly, § 1129(a)(9)(C) requires that FUTA taxes, due within the three year period, are subject to the six year time frame for payment under a plan of reorganization. After calculating the three year period, I conclude that delinquent FUTA taxes due in income years ending December 31, 1987, December 31, 1988, and December 31, 1989 are subject to the six year requirement of § 1129(a)(9)(C).

*Secured Claims of the IRS*

The Debtors dispute whether the secured tax claims of the IRS are subject to

---

**4.** This is true because withholding taxes are granted a seventh priority in payment under 11

U.S.C. § 507(a)(7)(C).

§ 1129(a)(9)(C). Section 1129(a)(9)(C) refers to § 507(a)(7) for determination of the types of claims covered. Section 507(a)(7) provides priority to the unsecured claims of governmental units. Based upon the mention of only unsecured claims in § 507(a)(7), the Debtors argue that secured tax claims are not subject to the confirmation standard found in § 1129(a)(9)(C).

The IRS responds that they should not be penalized by the presence of a tax lien. Alternatively, the IRS argues that secured FICA taxes enjoy priority status under § 507(a)(7)(C).

Section 1129(a) sets forth the requirements that must be met for plan confirmation. Each subsection establishes a different standard for evaluating the contents of a plan of reorganization. Some of the standards deal generally with what is required of a plan of reorganization. Section 1129(a)(3) mandates that the plan be proposed in good faith. Other subsections contain specific requirements for the treatment of distinct classes of claims.

Section 1129(a)(9) outlines the treatment necessary for priority claims in a Chapter 11 plan of reorganization. Section 1129(a)(9)(A) sets forth the standard for priority claims under § 507(a)(1) and (a)(2). Section 1129(a)(9)(B) deals with treatment of claims falling under § 507(a)(3)–(6). Finally, § 1129(a)(9)(C), by making reference to § 507(a)(7), specifically concerns the treatment to be afforded to the unsecured claims of governmental units.

Section 1129(a)(9) is limited in its application to a distinct class or type of claim. The scope of its confirmation standard goes to claims granted priority status under § 507. Section 507 establishes a particular type or category of unsecured claim. If payment in a bankruptcy could be assured to all creditors, there would be no need for § 507. Section 507 reflects Congress' exclusive determination that certain types of unsecured claims deserve by their nature to be paid first. For instance, administrative expenses are granted first priority. This insures that those who facilitate the debtor's bankruptcy will be rewarded. What is created under § 507 is a unique category of unsecured claims deserving early payment, before the bankruptcy estate is perhaps depleted. Since funds paid to priority creditors come from the general bankruptcy estate, § 507 accords priority in payment to certain unsecured claims to increase the chances that creditors holding such claims will receive payment.

A priority unsecured claim differs from a secured claim. Creditors secured by a lien need and deserve no special treatment. Their claims against the estate are secured by property that cannot be dissipated through the payment of other creditors. Secured creditors receive off the top, from the value of the encumbered property, and have the assurance of always receiving at least the value of their collateral when no competing lienholders exist. For example, under § 724(b)(6), encumbered property of the estate is available to unsecured creditors only after the claims of all lienholders have been satisfied. At this point in the distribution of funds, § 726 applies and directs the payment of priority claims. Subsequent to the satisfaction of secured creditors from their encumbered property, funds are then distributed to priority claimants.

■ Section 506 of the Bankruptcy Code establishes the value and extent to which a creditor possesses a secured claim against the debtor's bankruptcy estate. Courts need to look at this section when examining the rights of a creditor possessing a lien interest in property of the estate. Section 507 establishes an entirely different status of claims. Each subsection of § 507 explicitly limits its application to unsecured claims. Over and over again section 507 clearly states that its provision for priority payment extends only to unsecured claims. There would be no need for anything else with secured creditors already directing their attention not toward the bankruptcy estate but to the property encumbered by their lien. Secured and priority claims are separate types of claims and deserve different treatment. The conclusion is inescapable that a claim cannot be both secured and deserving of priority status under

§ 507 at the same time. Both are unique under the bankruptcy laws.

This result is confirmed by the Sixth Circuit in the case, *United States v. Darnell (In re Darnell)*, 834 F.2d 1263 (6th Cir.1987). The case concerned the payment of tax liens under § 724 of the Bankruptcy Code. The Commonwealth of Kentucky argued that in determining the order of payment of two secured tax claims, the court should make reference to the payment of priority claims under § 507. The Sixth Circuit rejected this argument. In considering the nature of priority claims, the Court emphasized that § 507(a)(7) "contains the priority for payment of certain *unsecured* claims of governmental units, including taxes." *Id.* at 1266 n. 6 (alteration and emphasis in original). The Sixth Circuit maintained the distinction under the Bankruptcy Code between secured tax claims and priority tax claims. *Id.* at 1268.

■ The way in which the Bankruptcy Code provides distinct treatment to secured and priority claims is reflected in the confirmation standards of § 1129. Section 1129(a)(9)(C) prescribes the confirmation standard for priority tax claims. The treatment necessary for secured claims is set forth elsewhere in § 1129. Section 1129(a)(7)(A)(ii) sets forth the minimum payment necessary to an impaired creditor who has not accepted the plan. Further, § 1129(b)(2) defines what is fair and equitable treatment for a secured creditor under a possible cramdown. Separate confirmation requirements are established for each class or category of claim. By explicitly limiting its reach to priority claims encompassed under § 507(a)(7), § 1129(a)(9)(C) mandates a six year time frame for payment only of unsecured tax claims.

Based on the fact that § 507(a)(7) concerns the priority treatment of unsecured tax claims only and that § 1129(a)(9)(C) mandates a six year time frame for payment of claims listed under § 507(a)(7), I find that the portion of the Internal Revenue Service's claim that is secured need not be paid in accordance with § 1129(a)(9)(C). The Internal Revenue Service is not entitled to claim both the benefits of its right to encumbered property and, when it is desirable, the status afforded to unsecured claims under § 507. Any claim of the IRS deemed, under § 506 to be secured, falls outside the confirmation requirement of § 1129(a)(9)(C).

■ The IRS alternatively argues that secured FICA withholding taxes enjoy priority under § 507(a)(7)(C) of the Bankruptcy Code which grants priority to "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity." The Debtors have already conceded that this section applies to the unsecured claims possessed by the IRS for FICA taxes. The IRS seems to argue that the phrase, "due in whatever capacity", means that both secured and unsecured claims fall under the grant of priority in § 507(a)(7)(C).

This argument is in error. Subsection seven of § 507 applies only to the unsecured claims of governmental units. It would be an interpretational error to conclude that the phrase "in whatever capacity" rebuts the introductory definition of the seventh priority. Also, what I have said before still holds true for this consideration, § 507 of the Bankruptcy Code deals with the priority for the payment of unsecured claims, only.

Concurring with my conclusion is a statement found in *Collier on Bankruptcy* which states:

> [t]he phrase "in whatever capacity" operates to include the liability of a responsible officer under the Internal Revenue Code (section 6672) for income taxes or for the employee's share of social security taxes which that officer was responsible for withholding from the wages of employees and paying to the Treasury.

3 *Collier on Bankruptcy* 507.04, 38 (Lawrence P. King, ed., 15th ed., 1991). The phrase, "in whatever capacity", does not expand the type of claim covered so as to include secured claims, but rather defines the scope of § 507(a)(7)(C) to include the ways in which a debtor can be liable for withholding taxes under the Internal Revenue Code.

Accordingly, all secured claims of the Internal Revenue Service fall outside the operation of § 1129(a)(9)(C) of the Code. The only claims subject to the six year time limitation for payment are the unsecured claims for FUTA and FICA taxes. As already noted, the FUTA tax debts must have been due within three years of the date of filing the petition. There is no similar time requirement as to when the FICA taxes must have been due.

Given my decision as to what taxes are subject to § 1129(a)(9)(C), I would like to see some sort of testimony as to the value of the claims subject to the six year requirement and whether that still precludes a feasible plan of reorganization. Also, I have yet to hear testimony on whether any prejudicial delay has occurred.