**In re Frank DiMARIA, Debtor.**

**Bankruptcy No. 95–20904–BKC–RBR.**

United States Bankruptcy Court,
S.D. Florida,
Broward Division.

Aug. 27, 1996.

Mariaelena Gayo–Guitian, Houston & Shahady, P.A., Fort Lauderdale, FL, for debtor.

*MEMORANDUM DECISION APPROVING CONFIRMATION OF DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION DATED APRIL 29, 1996; DENYING MOTIONS TO DISMISS FILED BY FIRST SOUTHERN NATIONAL BANK AND UNITED STATES, INTERNAL REVENUE SERVICE, AND DENYING UNITED STATES' MOTION FOR RELIEF FROM STAY*

RAYMOND B. RAY, Bankruptcy Judge.

THIS MATTER came before the Court on June 19, 1996 at 9:30 a.m. for the Confirmation Hearing of Debtor's First Amended Plan of Reorganization dated April 29, 1996, the United States' Motion to Dismiss or Convert and Motion For Relief from the Automatic Stay for Administrative Sale, the United States' Objection to Confirmation of Debtor's First Amended Plan of Reorganization and Notice of Rejection of First Amended Plan of Reorganization, and upon the Motion To Dismiss or Convert and Objection to Confirmation filed by First Southern National Bank. The Court, having reviewed the pleadings, considered the arguments of counsel, and being otherwise duly advised in the premises, finds as follows.

### *Jurisdiction*

The confirmation of a plan of reorganization, as a proceeding that arises under the Bankruptcy Code (Title 11, U.S.C.), is within the jurisdiction of the district court pursuant to 28 U.S.C. § 1334(b). The confirmation of a plan, pursuant to 28 U.S.C. § 157(b)(2)(A) and (L), is a core matter as to which a bankruptcy judge may enter appropriate orders and judgments.

### *Statement of the Facts*

The Debtor filed a Chapter 13 case on March 10, 1995. On June 29, 1995, the Debtor filed a Motion for Conversion of Chapter 13 case to Chapter 11 which was granted on August 3, 1996. Thereafter, on December 21, 1995, the Debtor filed a motion seeking authorization to sell non-estate assets (the assets of Frank's Ristorante, Inc.) to Montagna, Inc. ("Buyer"), and the same was approved by Order of this Court on January 23, 1996. The sale was consummated on February 12, 1996. As part of the sale, the Debtor and Buyer entered into a yearly Management Agreement whereby the Debtor agreed to manage Frank's Ristorante for a weekly gross salary of $1,200.00.

On December 14, 1995, the United States of America ("IRS") filed a Motion to Dismiss and Convert. The IRS also filed, on February 28, 1996, a Motion for Relief from the Automatic Stay for Administrative Sale. The hearings on both motions were continued to the confirmation hearing on April 29, 1996. Additionally, the IRS filed a Notice of

Rejection of First Amended Plan of Reorganization and an Objection to Confirmation.

As disclosed in Debtor's First Amended Disclosure Statement dated April 29, 1996, the Debtor owned and operated Frank's Ristorante in Pompano Beach, Florida for approximately 25 years. In 1991 and 1992 the Debtor attempted to diverse his business interest and purchased two tracts of land, 71.49 and 56.62 acres each, in Fort Pierce, Florida ("Ft. Pierce lots"). In order to finance the purchase of the Fort Pierce lots the Debtor sold a building he owned in Lake Worth, Florida, which sale resulted in a capital gains tax liability.

Shortly after the purchase of the Fort Pierce lots, the Debtor discovered that the land was contaminated and not suitable for immediate development or sale. The Debtor could not refinance or sell the Fort Pierce lots, and he was unable to pay the income tax liability resulting from the sale of the Lake Worth building. The Internal Revenue Service commenced collection procedures, levy and ultimately seizure of the Ft. Pierce lots in order to collect the unpaid tax liabilities. A sealed bid sale was scheduled for April 5, 1995, but the Debtor filed for bankruptcy relief before the sale could proceed.

The major features of the Debtor's Plan, relevant to the present decision, are the following:

(1) At confirmation the Debtor had on deposit a total of approximately $15,433.00 in his DIP account to be used towards the first payment due under the plan in the amount of $10,174.90.

(2) Administrative fees due to professionals: Houston & Shahady, P.A. in the amount of $16,932.59 and the U.S. Trustee's Office in the estimated amount of $250.00.

(3) Class 1 consisting of the Allowed Secured Claim of First Southern National Bank ("First Southern") in the approximate amount of $43,909.63 voted against the plan. First Southern filed a Motion To Dismiss or Convert and an Objection to Confirmation. However, at the Confirmation Hearing, Debtor's counsel represented that an agreement had been reached by the Debtor and First Southern curing the Bank's objection and Motion to Dismiss. The Debtor agreed to modify the First Amended Plan to provide for the cure of arrearages in the amount of $1,586.72 and continued monthly mortgage payments in the amount of $351.56. The claim of First Southern is secured by a first mortgage on Debtor's condominium located in Pompano Beach, Florida.

(4) Class 2 consists of the Allowed Secured Claim of Knutson Mortgage ("Knutson") in the approximate amount of $122,593.52. The claim of Knutson is secured by a first mortgage on real property located in Deerfield Beach, Florida owned by Debtor and his ex-wife and which is presently occupied by Debtor's ex-wife. Creditor will continue to receive monthly payments in the amount of $1,717.69. No ballot was filed by Class 2 claimant.

(5) Class 3 consists of the Allowed Secured Claim of Glendale Federal Bank ("Glendale") in the approximate amount of 26,596.16. The claim of Glendale is secured by a first mortgage on a home owned by Debtor and occupied by his son in Pompano Beach, Florida. The Debtor's son will be responsible for making the monthly mortgage payments in the amount of $475.00. A ballot rejecting the Debtor's plan was filed by Class 3 claimant.

(6) Class 4 consists of the Secured Claim of the Internal Revenue Service in the amount of $189,346.91. The claim of the IRS is secured by a Notice of Lien filed on or about February 2, 1994, February 28, 1994, and March 4, 1994, in Broward County, St. Lucie County, and Highlands County. Creditor will receive monthly payments in the amount of $2,380.71, over the next ten (10) years, with interest at eight (8%) percent, and retain its prepetition liens. IRS did not file a ballot but rather a Notice of Rejection of Plan.

(7) Class 5 consists of Unsecured Creditors. This Class consist of a total of five (5) creditors for a total of $65,354.95. These creditors will be paid 100% of their claim, quarterly, over a five year (5) period, without interest, commencing on the Effective Date. The first payment due to Class 5 is $3,267.75. A ballot accepting the Plan was filed by Class 5 claimants.

The first payment due under the Plan of Reorganization to creditors, as evidenced by the Debtor's Amended Certificate of Proponent of Plan is as follows:

| | |
|---|---|
| Houston & Shahady, P.A. | $16,932.59[1] |
| U.S. Trustee's Office | $ 250.00 |
| Class 1 First Southern Bank | $ 351.56 |
| Arrears to First Southern | $ 1,586.72 |
| Class 2 Knutson Mortgage | $ 1,717.69 |
| Class 3 Glendale Federal | $ 475.00 |
| Class 4 IRS | $ 2,526.18 |
| Class 5 Unsecured Creditors | $ 3,267.75 |
| | ======== |
| | $27,107.49 |

The Debtor testified that his Projected Monthly Income is as follows:

| | |
|---|---|
| Net Monthly Salary | $3,520.00 |
| Lease Payments from Ft. Pierce Speedway | $2,500.00 |
| Contribution from Son for Mtg. Payment | $ 800.00 |
| Contribution from Daughter | $ 500.00 |
| | ====== |
| | $7,320.00 |

The Debtor testified that his monthly debt service is as follows:

| | |
|---|---|
| First Southern Condo (Class 1) | $ 351.56 |
| Knutson Mortgage (Class 2) | $1,717.69 |
| Glendale Mortgage (Class 3) | $ 475.00 |
| IRS (Class 4) | $2,526.18 |
| | ====== |
| | $5,070.43 |

The Debtor further testified that his monthly living expenses are as follows:

| | |
|---|---|
| Alimony to Angela DiMaria | $ 600.00 |
| Insurance | $ 150.00 |
| Utilities | $ 200.00 |
| Transportation | $ 100.00 |
| Miscellaneous Expenses | $ 100.00 |
| | ====== |
| | $1,150.00 |

Pursuant to the terms of the Plan, the Debtor proposes to make monthly payments in the amount of $5,070.43 to his creditors from his monthly income and lease payments.

The Debtor's Assets per his Bankruptcy Schedules are as follows:

| | |
|---|---|
| Personal Property | $ 4,100.00 |
| Condominium in Pompano | $ 34,000.00 |
| Home in Deerfield Beach leased to son | $100,000.00 |
| Home in Deerfield Beach owned with ex-wife (Exempt) | $340,000.00 |
| 71 acre landfill located on Hammond Rd., Ft. Pierce, Fla. | $135,000.00 |
| 56 acres located on Center Road, Ft. Pierce, Florida | $ 91,674.00 |
| Stock in Frank's Ristorante | $ 25,000.00 |
| 25% Stock in Caffe Mondiale Classico | $ —0— |
| | ====== |
| TOTAL VALUE OF ASSETS: | $729,977.00 |

At confirmation the Debtor testified that his assets have a market value totalling $492,500.00. The liabilities associated with these assets, as reflected in the proofs of claim filed in this case and excluding the Debtor's tax liability, total $234,307.86.

The Debtor testified that there is presently no resale market for the Ft. Pierce lots because the real property was previously a landfill. However, the Debtor testified that the City of Ft. Pierce is presently considering the expansion of the Ft. Pierce Airport which would increase the value of said land dramatically and enable him to potentially pay the IRS in full upon a sale.

The IRS has a lien on all property of the Debtor including exempt property. The tax liability for both years are nondischargeable as the case was filed within three (3) years of the date of filing of Debtor's petition (i.e. March 10, 1995). Even if the taxes were dischargeable, the IRS is protected by virtue of the tax liens filed between February, 1994 and February, 1995. Any discharge to the Debtor by virtue of a confirmed chapter 11 plan will not prejudice the government or jeopardize its secured interest in the Debtor's collateral.

### Requirements of 11 U.S.C. 1129

█ In order for a Plan to be confirmed in a Chapter 11 case, the proponent of the Plan must demonstrate that the requirements of Section 1129 of the Bankruptcy Code are satisfied. Although the matter has been debated, it now appears fairly well established that the burden of proof is by a preponderance of the evidence. *In re Briscoe Enters., Ltd., II*, 994 F.2d 1160, 1163–65 (5th Cir. 1993); *In re Arnold & Baker Farms*, 177

---

1. Houston & Shahady, P.A. has agreed to waive payment at confirmation and enter into an agreement with the Debtor to receive payment of its fees over time from Debtor's excess cash flow.

B.R. 648, 654–55 (9th Cir. BAP 1994); *In re Locke Mill Partners,* 178 B.R. 697, 700 (Bankr.M.D.N.C.1995). That standard has been applied to the fact findings set forth above, and in the discussion that follows.

Section 1129 operates in two parts. First, § 1129(a) sets forth a number of requirements generally applicable to Chapter 11 plans. Pursuant to the Debtor's Affidavit of Compliance with 11 U.S.C. 1129(a) In Support of Confirmation, the Debtor's Plan satisfies all of the requirements of § 1129(a)(1)–(13) with the exception of 11 U.S.C. § .1129(a)(8) as a result of the objection filed by the IRS and First Southern Bank. The Court must also determine whether the Debtor's Plan is feasible under 11 U.S.C. § 1129(a)(11).

### The Debtor's Plan Satisfies the Feasibility Requirement of 11 U.S.C. § 1129(a)(11)

The IRS asserts that the debtor has failed to establish compliance with 11 U.S.C. § 1129(a)(11) and seeks dismissal of the case on the grounds that Debtor's plan is unfeasible. Section 1129(a)(11) of the Code sets forth the feasibility requirement and provides that a plan may be confirmed only if confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). The feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed. *Kane v. Johns–Manville Corp.,* 843 F.2d 636, 649 (2nd Cir. 1988). *See also, In re Patrician St. Joseph Partners, Ltd.,* 169 B.R. 669 (D.Ariz.1994).

The projected cash flow set out in Debtor's Plan shows that the Debtor will have sufficient monthly cash flow to pay all of the Debtor's anticipated expenses, together with the required debt service and payments to secured and unsecured creditors. The Debtor testified that his Projected Monthly Income from salary, lease payments from Ft. Pierce Speedway Association, Inc. ("Ft.

Pierce Speedway"), and contribution from his children is $7,320.00. Pursuant to the terms of the Plan the Debtor proposes to make monthly payments in the amount of $5,070.43 to his creditors. The monthly excess cash flow in the approximate amount of $1,099.57 will be sufficient to cover the quarterly payments in the amount of $3,267.75 to Class 5 creditors. The first payment due under the Plan to creditors, as evidenced by the Debtor's Amended Certificate of Proponent of Plan, is $10,174.90.[2] The Debtor testified that he has $15,433.00 in his DIP account to cover the first payment under the plan.

The IRS argues that the uncertainty with the Ft. Pierce Speedway lease payments and the small margin between the Debtor's income and projected payments establishes that Debtor's plan is not feasible. The Court disagrees and finds that the Debtor has shown through the course of his chapter 11 proceedings the ability to manage his property and meet his secured debt obligations, monthly living expenses, payment of real estate taxes, quarterly fees to the U.S. Trustee's office and other miscellaneous expenses, while accumulating $15,000.00 in his DIP account. Furthermore, there is no evidence that Ft. Pierce Speedway will not continue to make its monthly lease payments to Debtor or renew its lease given the financial investment it has made in improving the leased property. Accordingly, the Debtor has established the feasibility of his plan and all of the requirements of 11 U.S.C. § 1129(a).

### The Debtor's Plan Satisfies the "Cram down" Provision of 11 U.S.C. § 1129(b)

The Debtor is seeking to confirm his Plan over the objection of the IRS and First Southern. Only Class 5 consisting of the unsecured creditors has accepted the Plan. Section § 1129(b) provides that a plan complying with all of the other requirements of § 1129(a) may be confirmed despite the failure of an impaired class to accept it, if several additional "cram down" requirements are also met. *In re Bryson Properties, XVIII,* 961 F.2d 496, 500 (4th Cir.1992); *Hanson v.*

---

**2.** Houston & Shahady, P.A. has agreed to waive its fees at confirmation which reduces the Debt-

or's amount for confirmation from $27,107.49 to $10,174.90.

*First Bank,* 828 F.2d 1310, 1312 n. 2 (8th Cir.1987). Additionally, the cram down provision of 11 U.S.C. § 1129(b)(1) includes the requirement that a plan be "fair and equitable" with respect to a nonaccepting impaired class. The requirement that a plan be "fair and equitable" with respect to a secured class is set out in 11 U.S.C. § 1129(b)(2)(A).

The IRS argues that the Plan is not "fair and equitable" because it imposes a ten year repayment term on its claim. The IRS asserts that its secured claim should be entitled to treatment as a priority unsecured claim, namely payment within six years from the date of assessment. The Court finds that the secured claim of the IRS need not be paid in accordance with 11 U.S.C. § 1129(a)(9)(C) and may be treated as a secured claim in accordance with 1129(b)(2)(A)(i). Section 1129(a)(9)(C) provides that claims specified in 11 U.S.C. § 507(a)(7) be paid over a period not to exceed six years after the date of assessment of the claim. However, 11 U.S.C. § 507(a)(7) applies only to unsecured claims of governmental units. *See, In re Rotella,* 1994 WL 362271 (Bankr.N.D.N.Y.1994) (quoting, *United States v. Neal Pharmacal Co.,* 789 F.2d 1283, 1284, n. 2 (8th Cir.1986)). *See also, In re Reichert,* 138 B.R. 522, 527 (Bankr. W.D.Mich.1992). This Court agrees with the reasoning followed in the aforementioned cases and finds that the IRS is not entitled to claim both the benefits of its right to encumbered property and the status afforded to unsecured claims under § 507.

■ Based upon the Court's finding that the IRS' secured claim is not entitled to priority, this Court must examine the requirements of § 1129(b)(2)(A) which addresses the treatment of secured claims. Specifically, 11 U.S.C. § 1129(b)(2)(A)(i)(I),. (II) requires that the holder of such claim retain its liens securing such claim and that such creditor receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim. Under this provision. the creditor must be paid the amount of its allowed secured claim together with a market rate of interest. *Bryson Properties,* 961 F.2d at 500–01.

The Court finds that a ten year payout to the IRS is not excessive or unreasonable when the collateral is real estate and the secured creditor is receiving interest to compensate it for the opportunity cost of money and risk of default. Pursuant to 11 U.S.C. § 1129(b)(2)(A), a court may confirm a plan that provides that the holder of a secured claim retain its lien and also receive deferred cash payments totaling at least the amount of such allowed claim. *Rotella,* 1994 WL 362271 at *3. The Debtor's Plan provides for the IRS to retain its lien on Debtor's exempt and non-exempt assets. Furthermore, the Plan provides for the IRS to receive monthly cash payments of $2,526.18 over a period of ten (10) years at a current market rate of eight (8%) percent. Accordingly, the IRS will receive a future stream of deferred cash payments with a value equal to the present value of its claim. No objection was raised by the IRS to the market rate of interest stated in the plan. Therefore, the Court finds that the treatment proposed by the Debtor satisfies the requirements of 11 U.S.C. § 1129(b)(2)(A)(i). Accordingly, based upon the facts adduced at the hearing, testimony of Debtor and for the reasons set forth below, the Court finds that the plan meets the requirements of 11 U.S.C. § 1129(a) & (b) and that confirmation of the Plan is appropriate.

### RELIEF FROM STAY

■ Pursuant to 11 U.S.C. § 362(d)(1) & (2) the IRS seeks relief from stay and argues that the Debtor has no equity in the Ft. Pierce lots, that such properties are not necessary for an effective reorganization, and that its interest is not adequately protected.

11 U.S.C. § 362(d)(1) & (2) provide as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . .
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if . . .

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

■ Pursuant to the Debtor's schedules and testimony at the confirmation hearing, the market value of all his real property is approximately $492,500.00 and the secured debt is approximately $234,307.86. The IRS liens are secured by not only the Ft. Pierce properties but all of Debtor's real property. Based upon the foregoing, the IRS is fully secured by an equity cushion of approximately $258,192.14. Additionally, the Debtor's Plan provides for the IRS to retain its liens and receive monthly cash payments with interest. Accordingly, the Court finds that the Debtor possesses equity in the subject properties and relief from stay pursuant to 11 U.S.C. § 362(d)(2) is not at issue. Additionally, the Court finds the IRS' interest is adequately protected by both the equity cushion and the Debtor's agreement to make monthly cash payments with interest under his Plan.

■ Moreover, the Court finds that the property subject to the stay is necessary to an effective reorganization of the Debtor because it provides a monthly source of income to the Debtor. The Debtor leases approximately 15 acres to Fort Pierce Speedway Association, Inc., for $2,500.00 a month. The 71 acre tract of land is vacant and is encumbered by a mortgage held by the City of Ft. Pierce. The Debtor's plan provides for the payment of the City of Ft. Pierce mortgage within five (5) years which increases the equity cushion of the IRS. The Debtor testified that there is presently no market for the Ft. Pierce properties. Therefore, relief from stay to the IRS for the sale of these properties would not result, after payment of the City of Ft. Pierce mortgage, in any partial satisfaction of the IRS claim. Instead, the Debtor testified that the 71 acre tract, which is parallel to the airport runway, may increase in value if the Ft. Pierce airport expansion is approved, which would result in a substantial payment of the IRS claim. Accordingly, the Court finds that the Ft. Pierce lots are necessary to the Debtor's reorganization under 11 U.S.C. § 362(d)(2)(B) and relief from stay is denied.

### CONCLUSION

For the reasons set forth above, the Court finds that the Debtor's First Amended Plan of Reorganization dated April 29, 1996 has been proposed in good faith and not by any means forbidden by law. The proponent of the plan has sufficient monies in his DIP account for distribution to creditors under the Plan and the Plan complies with all of the applicable requirements of 11 U.S.C. § 1129(a). Additionally, the Court finds that the Debtor's Plan is feasible within the meaning of 11 U.S.C. § 1129(a)(11). Furthermore, the Court finds that the Debtor's Plan satisfies the requirements of 11 U.S.C. § 1129(b)(2)(A) in its treatment of the IRS, First Southern, and Glendale Federal Bank and is thereby entitled to cram down Classes 1, 3 and 4 of the Plan. Accordingly, the Motions to Dismiss filed by the IRS and First Southern Bank are denied. The IRS' Motion for Relief from Stay is also denied.

The Court will enter a separate order of confirmation consistent with its Memorandum Decision.

DONE AND ORDERED.