### In re MARQUAM INVESTMENT CORPORATION, Debtor.

### Susan BREWER, Plaintiff–Appellee,

### v.

### ERWIN & ERWIN, P.C., Defendant–Appellant.

### No. 90–35312.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 1991.

Decided Aug. 26, 1991.

Charles C. Erwin, Erwin & Erwin, Portland, Or., for defendant-appellant.

Charles Robinowitz, Portland, Or., for plaintiff-appellee.

Before ALARCON, FERGUSON and HALL, Circuit Judges.

ALARCON, Circuit Judge:

Erwin & Erwin, P.C., a law firm, (the Erwin law firm) appeals from the reversal, by the district court, of the bankruptcy court's order allowing the Erwin law firm's unsecured claim for attorneys' fees against the debtor, Marquam Investment Corporation (Marquam). The Erwin law firm seeks reversal on the ground that the district court erred in concluding that the bankruptcy court's finding, that the Erwin law firm did not intend to donate its legal services to the creditor, was clearly erroneous.

Appellant's Brief at 2. We affirm the judgment entered by the district court because our independent review of the record before the bankruptcy court has convinced us that the bankruptcy court clearly erred in finding that Marquam agreed to pay the Erwin law firm for any legal services.

The Erwin law firm also contends that the district court considered matters that were outside the record of the bankruptcy proceedings, and, as a result, made improper findings of fact. Because our review of the bankruptcy court's decision is *de novo*, any error that may have occurred resulting from the district court's alleged consideration of matters not on the record would be completely harmless.

## I

### PERTINENT FACTS AND PROCEDURAL POSTURE

Marquam Corporation is a landholding company whose assets consist of an office building and several unimproved properties. Warde Erwin is the president of Marquam. He owns 60% of Marquam's shares of stock. LaVelle Mullennex owns 40% of Marquam's stock. Charles Erwin was designated as the vice-president and a director of Marquam in the petition for bankruptcy. Warde Erwin and his son, Charles, practice law under the firm name, Erwin & Erwin, P.C. LaVelle Mullennex is Warde Erwin's legal secretary.

Suzan Brewer is a former tenant of Marquam. A dispute arose when Marquam sought to evict Brewer in order to demolish the house in which Brewer was living. Brewer sued Marquam in 1976 for intentional infliction of emotional distress and violation of the Oregon Residential Landlord and Tenant Act, ORS 91.700–.895. On June 20, 1980, the jury returned a verdict in favor of Brewer. The jury awarded a total of $22,880 in general damages and $75,000 in punitive damages.

On June 23, 1980, three days after the jury returned its verdict, Marquam transferred its unimproved lots to Squaw Creek Construction Company. Brewer filed a fraudulent conveyance action in state court against Marquam. On April 21, 1982, the state court set aside the transfer to the Squaw Creek Construction Company.

Marquam filed an appeal from the judgment in favor of Brewer in the tort action. On April 26, 1983, the Oregon Supreme Court denied final review of the 1980 judgment. Eight days later, on May 4, 1983, Marquam filed for bankruptcy. It listed assets totaling $107,152.

The bankruptcy petition prepared by Warde H. Erwin as President of Marquam, the debtor corporation, listed Erwin, Lamb & Erwin as creditors regarding an unsecured claim "[f]or attorneys' fees rendered staring (sic) in April of 1976 to date for defense and services in various lawsuits entailed in representation of Marquam."

No billing or any corporate documents evidencing that a debt for attorneys' fees was incurred by Marquam was attached to the petition in bankruptcy. Furthermore, no time slips were submitted with the petition. Time slips were attached to the Erwin law firm's amended claim filed in 1986.

At the hearing before the bankruptcy court, the Erwin law firm did not produce an account receivable or any billing to Marquam for legal services. No corporate records, such as the minutes of a board of director's meeting or an account payable, were offered to show that Marquam had agreed to pay the Erwin law firm for legal services.

The bankruptcy court recognized that there was no documentary evidence to support the Erwin law firm's claim that Marquam intended to enter into a contract to pay for legal services. The bankruptcy court stated: "All we have is the testimony of Charles Erwin that such was the intent." Nevertheless, the bankruptcy court found that "the evidence shows that the services performed by the professional corporation were not intended to be donated to Marquam but were intended that they would be paid by Marquam when funds were available by Marquam to make payment of those fees...."

On March 24, 1988, the bankruptcy court approved Marquam's chapter 11 plan and allowed the Erwin law firm's claim for $120,000 in attorney's fees. Brewer's $75,000 punitive damages claim was discharged pursuant to 11 U.S.C. § 726(a)(4) because there were insufficient funds in the bankrupt's estate to reach it.

## II

## DISCUSSION

A. *Function of Court of Appeals in Reviewing A Bankruptcy Court's Findings and Conclusions*

This matter is before this court following reversal by the district court of the bankruptcy court's findings and conclusions of law concerning a law firm's claim for attorneys' fees against the debtor. Our review of the bankruptcy court's order is *de novo*.

Because we are in as good a position as the district court to review the findings for the bankruptcy court, we independently review the bankruptcy court's decision. *See, e.g., In re Mellor,* 734 F.2d 1396, 1399 (9th Cir.1984); *In re Comer,* 723 F.2d 737, 739 (9th Cir.1984); *In re Bialac,* 712 F.2d 426, 429 (9th Cir.1983). We review the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. *In re American Mariner Industries, Inc.,* 734 F.2d 426, 429 (9th Cir.1984). (Footnote omitted).

*Pizza of Hawaii, Inc. v. Shakey's, Inc.* (Matter of Pizza of Hawaii, Inc.), 761 F.2d 1374, 1377 (9th Cir.1985). Thus, we are in reality reviewing the claims of error presented by the party that did *not* prevail before the bankruptcy court. While Brewer is nominally the *appellee* before this court, it is her challenge to the bankruptcy court's findings and conclusions of law that we must review. By the same token, although designated as the appellant, the Erwin law firm's mission before this court is to defend the victory it achieved in the bankruptcy court.

B. *Impact of Insider Status On Proof of Attorney Fee Claim*

Brewer argues that the bankruptcy court erred as a matter of law in concluding that Charles Erwin "has no relationship or no ownership interest in Marquam." We review *de novo* a bankruptcy court's conclusion of law. *Ragsdale v. Haller,* 780 F.2d 794, 795 (9th Cir.1986). The term "insider" includes a director, officer, or person in control of a debtor corporation. 11 U.S.C. § 101(30)(B)(i)(ii)(iii). A relative of a director, officer, or person in control of the corporation is also an insider. 11 U.S.C. § 101(30)(B)(vi). Warde Erwin was the president of Marquam. His son, Charles Erwin was listed as Marquam's director and vice-president in Marquam's 1983 bankruptcy petition. Thus, Warde Erwin and Charles Erwin were insiders of Marquam. The bankruptcy court's conclusion that Charles Erwin was not an insider was erroneous as a matter of law.

The bankruptcy court's failure to recognize that Charles Erwin was an insider may explain its finding that the Erwin law firm's claim for legal services was a valid debt of the corporation. The Supreme Court has instructed that an insider's dealings with a bankrupt corporation must be "subjected to rigorous scrutiny." *Pepper v. Litton,* 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939).

When the validity of an insider's contract with a corporation is at issue, the burden is on the insider "not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." *Id.*

The Court also explained in *Pepper v. Litton,* the test that must be applied to an insider's transaction with a corporation:

> The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside.

*Id.* at 306–307, 60 S.Ct. at 245.

The bankruptcy court did not expressly place the burden on the Erwin law firm to

prove that it entered into an agreement in good faith with Marquam for legal services. No evidence was offered that Marquam agreed to pay for any services furnished by the Erwin law firm. The Erwin law firm did not send a bill for its legal services prior to the date Marquam filed a petition in bankruptcy. The law firm did not record its alleged services to Marquam in an account receivable. The corporation did not enter legal expenses owed the law firm as an account payable. No evidence was presented of any corporate minutes reflecting a decision to enter into an agreement with the Erwin law firm for legal services.

The bankruptcy court based its finding that Marquam owed the law firm $120,000 for legal services primarily on Charles Erwin's testimony that he did not intend to donate his legal services. The bankruptcy court's reasoning can be summarized as follows:

A lawyer is entitled to payment for legal services performed pursuant to an agreement with a bankrupt corporation.

Charles Erwin did not intend to donate his legal services to the Marquam Investment Corporation.

Therefore, the Marquam Investment Corporation promised to pay Charles Erwin for his legal services.

This flawed syllogism not only defies elementary precepts of logic, it violates fundamental principles of contract law that require mutuality of assent, and ignores the burden placed upon an insider to prove that the debt resulted from an arm's length transaction that can withstand rigorous scrutiny.

Because the bankruptcy court failed to subject the Erwin law firm's claim to the rigorous scrutiny and the burden of proof required of an insider, its judgment cannot stand.

C. *Application of the Clearly Erroneous Standard*

■ Brewer also asserts that the bankruptcy court's finding that the Erwin law firm's claim for legal services was valid is clearly erroneous. We agree.

A trial court's finding of fact is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Upon a review of the record before the court, we have a definite and firm conviction that a mistake has been made in this matter.

The facts before the bankruptcy court demonstrate that a corporation controlled by members of the Erwin law firm has successfully avoided payment of a state court judgment entered more than 11 years ago in favor of Brewer and against Marquam.

Eight days after the Oregon Supreme Court denied final review of the 1980 judgment, Marquam filed a petition in bankruptcy listing its assets at $107,152, and the claim of the Erwin law firm for $120,000 in unbilled legal services. As set forth above, this claim is not supported by corporate minutes, an account payable, or any record of any billing for legal services. Under all the circumstances presented in the record before the bankruptcy court, we have concluded the testimony of the corporate insiders in support of the Erwin law firm's claim for legal services is so "implausible on its face that a reasonable fact finder would not credit it." *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

After reviewing the evidence in the record before the bankruptcy court, we are left with a definite and firm conviction that the bankruptcy court was mistaken in finding that the Marquam Investment Corporation entered into a contract to pay the Erwin law firm for its legal services. Accordingly, we hold that the bankruptcy court's finding that Charles Erwin did not intend to donate his legal services is clearly erroneous.

### D. *Consideration by the District Court of Matters Outside the Record*

 The Erwin law firm contends that the district court erred in considering matters outside the record and made impermissible findings in reversing the bankruptcy court. As set forth above, we have reviewed the findings of fact and conclusions of law of the bankruptcy court without deference to the district court's decision on these matters, as required by the law of this circuit. Our *de novo* or independent review has convinced us that the bankruptcy court's decision must be reversed. That is the ultimate conclusion reached by the district court. "[W]e may affirm the district court based on any reason finding support in the record." *Welch v. Fritz,* 909 F.2d 1330, 1331 (9th Cir.1990) Thus, assuming *arguendo* that the district court erred in reaching a correct conclusion, any error by the district court has had no impact on our decision in this matter.

### E. *Failure of the District Court to Hold A Hearing*

 The Erwin law firm asserts that the district court by ruling without a hearing or an opportunity for oral argument did not comply with Fed.R.Bankr. 8012. The Erwin law firm, however, failed to provide "[a] statement of the issue[s] presented and the applicable standard of review" in its brief before this court. Fed.R.Bankr. 8010(a)(1)(C). Moreover the Erwin law firm's brief does not include an argument containing "the contentions of the appellant with respect to the issue[s] presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Fed.R.Bankr. 8010(a)(1)(E). Erwin's failure to comply with Rule 8010(a)(1)(C) waives this issue on appeal. *See Northwest Acceptance Corp. v. Lynnwood Equip., Inc.,* 841 F.2d 918, 923 (9th Cir.1988). (Failure to comply with the parallel rule, Fed.R.App.P. 28(a)(4), waives the issue on appeal.)

### F. *Request for Judicial Notice*

 Brewer asks this court to take judicial notice of facts which are not readily determinable by resort to unquestionable sources. We may not take judicial notice of facts which are not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2). Brewer's request for judicial notice is denied.

AFFIRMED.