# FILED

APR 20 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-16-1374-KuFL |
| ) | |
| DESERT SPRINGS FINANCIAL, LLC,) | Bk. No.   6:16-bk-14859-MW |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| YUN HEI SHIN; RAMON PALM LANE,) | |
| INC., ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| MITCHELL ALTMAN, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on March 23, 2017
at Pasadena, California

Filed – April 20, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark S. Wallace, Bankruptcy Judge, Presiding

Appearances:   Kathleen P. March argued for appellants; Todd L. Turoci argued for appellee.

Before:  KURTZ, FARIS and LAFFERTY, Bankruptcy Judges.

---

[*]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Yun Hei Shin and Ramon Palm Lane, Inc.[1] appeal from an order overruling their objection to the proof of claim Mitchell Altman filed against the chapter 11[2] debtor Desert Springs Financial, LLC.

The bankruptcy court determined that the facts in the record at the time of the claim objection hearing were insufficient to rebut the presumption of validity applicable to Mitchell's procedurally compliant proof of claim under Rule 3001(f). Because the bankruptcy court's determination was clearly erroneous, we VACATE its order overruling the claim objection, and we REMAND for further proceedings.

**FACTS**

Mitchell Altman is the son of Desert Springs Financial's managing member Murray Altman. Murray owns 75% of the debtor and Shin owns 25%. Murray and Shin engaged in years of state court litigation, and Shin claims she ultimately obtained a state court judgment against Murray for roughly $1.4 million. Desert Springs Financial's schedules reflect that Shin (or her wholly owned corporation) is a judgment creditor of the company for a similar amount.

---

[1]  Ramon Palm Lane is Shin's wholly owned corporation. For purposes of this appeal, Ramon Palm Lane and Shin appear to have an identity of interest. Unless otherwise indicated, all references to Shin herein are to both Shin and Ramon Palm Lane.

[2]  Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

After Desert Springs Financial commenced its bankruptcy case in May 2016, Mitchell filed a proof of claim in which he asserted that Desert Springs Financial was indebted to him based on a $600,000 secured loan he made to the company in May 2013. With accrued prepetition interest, Mitchell claimed he was owed over $760,000 as of the date of Desert Springs Financial's petition filing. Mitchell attached to his proof of claim a note and deed of trust executed by his father Murray on behalf of Desert Springs Financial in January 2014. The loan documents tend to demonstrate that a debt exists and that it is secured by Desert Springs Financial's real property located in Palm Desert, California, as described in the deed of trust.

Shin filed her claim objection in September 2016. Among other things, Shin pointed out that the note and deed of trust were executed by Murray – who qualified as an insider under the Code's statutory definition and who controlled Desert Springs Financial as its managing member. Shin further pointed out that on the other side of the purported loan transaction was Murray's son Mitchell – who also qualified as an insider under the Code. Shin additionally noted that Murray executed the loan documents roughly eight months after the loan transaction supposedly was entered into.

While Shin did not point it out in her objection, it also seems odd that the alleged loan apparently went into default roughly 12 days after the parties got around to documenting it. On its face, the note dated January 16, 2014 provided for the first annual interest payment of $36,000 to be made on January 23, 2014 – and provided for a five day grace period before the

3

nonpayment of interest became an event of default. The statement of indebtedness attached to the proof of claim indicates that Desert Springs Financial never made the the January 23, 2014 interest payment or any of the other annual interest payments due under the note. It additionally seems peculiar that the statement of indebtedness charged Desert Springs Financial for 31 months of prepetition interest at the default interest rate, when there were only 28 months between the first interest payment default and the date of Desert Springs Financial's petition.[3]

Instead of focusing on the loan documents, Shin focused on Desert Springs Financial's books and records. She claimed to have reviewed the company's books and records between 2009 and March 2014 and opined based on that review that there was no evidence in those books and records of any loan from Mitchell to Desert Springs Financial. Shin also characterized as suspicious Desert Springs Financial's inconsistent listing of the company's debts to Mitchell in its initial and amended bankruptcy schedules. None of the variously scheduled amounts came anywhere near the amount of the $600,000 note.

In his response to Shin's claim objection, Mitchell noted that, while Shin might dispute that he was the source of the $600,000, there was no dispute regarding the existence of the $600,000 or the use of those funds in May 2013 to pay off a

[3] There is yet another curiosity in the note: one note provision identifies interest payment dates as annual events, whereas another note provision requires the borrower to make "consecutive monthly installments" on each "Interest Payment Date." Presumably, a business entity executing bona fide loan documents would be concerned about the note's apparent inconsistency regarding when interest payments were due.

4

$600,000 loan that Desert Springs Financial owed to Shin. As Mitchell explained, Desert Springs Financial paid Shin the $600,000 in May 2013 to prevent Shin from levying on a writ of attachment she had obtained from the state court. Shin has not disputed Desert Springs Financial's payment of the $600,000 to her for this purpose.

More importantly for purposes of this appeal, Mitchell asserted that his proof of claim was filed in compliance with the applicable bankruptcy rules, so his claim was entitled to a presumption as to its validity and amount under Rule 3001(f). According to Mitchell, nothing in Shin's claim objection or in the declarations accompanying her claim objection was sufficient to rebut this presumption.

Mitchell contended that most of the contents of the claim objection declarations was really argument, or lacked a foundation as to the declarant's personal knowledge, or both. In furtherance of this contention, Mitchell filed evidentiary objections at the same time he filed his claim objection response. In relevant part, Mitchell challenged paragraph six of Shin's declaration, which stated:

> From the Superior Court litigation against [Murray] and DSF, I have copies of DSF's books, from 2009 through 3/5/14 (date the supposed DOT was recorded). I have reviewed those DSF books and records thoroughly, and those DSF books and records do **NOT** show that Mitchell Altman lent **ANY** money to DSF.

Shin Decl. (Sept. 13, 2016) at ¶ 6 (Emphasis in original). Mitchell maintained that paragraph six was inadmissible based on the following grounds: "Lack of personal knowledge, lack of foundation, argument. Fed.R.Evid.602. Not the best evidence as

5

to contents of documents. Fed.R.Evid.1002. Inadmissible hearsay. Fed.R.Evid.802. Improper opinion testimony. Fed.R.Evid.701." Evid. Objections (Oct. 4, 2016).

Mitchell's response to the claim objection did not contain much in the way of evidence. Instead, Mitchell seemed content, for the most part, to rely upon the prima facie validity of his proof of claim. Mitchell did submit a half-page declaration in support of his response. In it, Mitchell stated that: (1) he loaned Desert Springs Financial $600,000 so that the company could pay off Shin's $600,000 loan; (2) even before the loan was documented, he made the loan on the understanding that he would be given a deed of trust securing the loan against Desert Springs Financial's property; and (3) he does not know why it took Desert Springs Financial's counsel eight months to document the transaction. The only other evidence Mitchell presented with his claim objection response pertained to the fact that the $600,000 was paid to Shin to prevent her from levying on the writ of attachment she had obtained in that amount.

Shin filed a reply brief and a response to Mitchell's evidentiary objections. In an attempt to fend off Mitchell's best evidence objection regarding paragraph six of her declaration, Shin filed a supplemental declaration and attached to it what she represented were excerpts from Desert Springs Financial's books and records. The excerpts include what appears to be a page from Desert Springs Financial's general ledger. Two ledger entries dated May 6, 2013 are of particular interest. From the parties' other evidence, on or about that date, Desert Springs Financial repaid Shin's $600,000 loan. The first ledger

6

entry shows a debit to Murray's capital account in the amount of $600,000 and the second ledger entry shows a credit to Shin's loan payable account in the same amount.

The same general ledger page on which these two ledger entries appear contains other ledger entries dated between April 16, 2013 and May 23, 2013. None of these ledger entries show any ledger activity on a loan payable account in Mitchell's name. In fact, the Desert Springs Financial Balance Sheet pages accompanying Shin's supplemental declaration reflect that, as of September 25, 2013, Desert Springs Financial had no loan payable account at all for Mitchell.

At the hearing on the claim objection, the bankruptcy court sustained most of Mitchell's evidentiary objections. Concerning paragraph 6 of Shin's declaration, the bankruptcy court sustained the objection based on the best evidence rule and on a lack of foundation. Shin argued that her supplemental declaration, with the excerpts from Desert Springs Financial's books and records attached, cured any evidentiary defect in her original submission. The bankruptcy court disagreed. As a threshold matter, the bankruptcy court commented that there was no evidence presented that Shin was an accountant or otherwise qualified to explain what the books and records demonstrated in terms of the May 2013 funding of Shin's loan repayment. The court also reasoned that the books and records excerpts did not include any recent financials from around the time Desert Springs Financial filed its bankruptcy petition. According to the court, the assets and liabilities of the company at the time the petition was filed (in May 2016) were critical and how the company

7

originally booked the transaction in May 2013 was not. The following quote is representative of the bankruptcy court's reasoning:

> All right. I think we are arguing paragraph 6 [of the Shin declaration]. And the Court's looked at the attachments to the exhibits to Ms. Shin's supplemental declaration and the Court's ruling [sustaining the evidentiary objection to paragraph 6] stands. I think that what's attached is a partial excerpt from the books and records balance sheets going back almost -- actually over three years and I think what counts is what the financial -- what the books and records showed on the petition date, not what they showed three years ago.

Hr'g Tr. (Oct. 18, 2016) at 6:7-15; see also id. at 19:4-7 ("The records that are attached are actually out-of-date records. They show what might have been the state of affairs in 2013, but they don't show the state of affairs on the petition date."). Apparently, the court believed that, even if the funding of the $600,000 was not originally conceived as a loan from Mitchell to Desert Springs Financial in May 2013, it might have been re-conceived as that at some point before Desert Springs Financial's bankruptcy filing. As the bankruptcy court reasoned, because of the limited time period covered by Shin's books and records excerpts, they did not show whether "Murray Altman may have gifted that loan to his son between 2013 and the petition date." Hr'g Tr. (Oct. 18, 2016) at 7:10-12.

On the merits, the bankruptcy court held that Mitchell was entitled to the benefit of the Rule 3001(f) presumption and that, to rebut this presumption, Shin had the burden of presenting evidence with a "probative force . . . equal to or greater than the probative force of the proof of claim." Hr'g Tr. (Oct. 18, 2016) at 18:6-8. The court explained that the evidence Shin

8

presented in support of her claim objection – including the "out-of-date" books and records excerpts – was insufficient to overcome the Rule 3001(f) presumption. According to the court, in light of Shin's failure to overcome the presumption, it was unnecessary to reach the larger burden of proof issues, which would have required Mitchell to prove the validity of his claim by a preponderance of the evidence.

The bankruptcy court entered its order overruling Shin's claim objection on October 20, 2016, and Shin timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158, subject to the mootness discussion set forth immediately below.

While this appeal has been pending, the bankruptcy court entered an order dismissing the underlying bankruptcy case. In light of the case dismissal, we must consider whether this appeal is moot. If we no longer can grant any meaningful relief to Shin even if she were to prevail on appeal, this appeal must be dismissed as moot. Ellis v. Yu (In re Ellis), 523 B.R. 673, 676 (9th Cir. BAP 2014) (citing Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1087 (9th Cir. 2011)).

It is debatable whether case dismissal can render moot an appeal from an order allowing or disallowing a claim. Compare Bevan v. Socal Commc'ns Sites, LLC (In re Bevan), 327 F.3d 994, 996-97 (9th Cir. 2003) (appeal from order overruling claim objection not moot because of potential preclusive effect that order might have in future litigation), with Center For

9

*Biological Diversity v. Lohn*, 511 F.3d 960, 965 (9th Cir. 2007) (citing *Pilate v. Burrell (In re Burrell)*, 415 F.3d 994, 998-99 (9th Cir. 2005)) (potential preclusive effect of the order on appeal did not prevent the appeal from that order from becoming moot).

We do not need to resolve this debate. Even if case dismissal sometimes can render moot an appeal from an order overruling a claim objection, this appeal has not yet become moot because the time to appeal the case dismissal order has not yet run. As long as the case dismissal order potentially is subject to reversal on appeal, effective and meaningful relief for Shin in her current appeal is not foreclosed.

The time to appeal the case dismissal order has not yet run because that order is not yet final. The case dismissal order explicitly reserved for future hearing, on a date certain, the issue of whether its dismissal of the current bankruptcy case should include a 180-day bar to the filing of a new bankruptcy case. Requests for restrictions on future bankruptcy filings typically are heard and determined as part of the case dismissal proceedings, and rulings granting such restrictions typically are appealed as part of the appellate review of the case dismissal order. See *Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 922 (9th Cir. BAP 2011) (stating that, once the bankruptcy court has determined that cause for dismissal exists, court should then determine whether any sort of restriction on future bankruptcy filings should be imposed).

More importantly, a bankruptcy court's order is not final and immediately appealable unless it fully adjudicated the issues

10

at bar and clearly evidenced "the judge's intent that it be the court's final act in the matter." Slimick v. Silva (In re Slimick), 928 F.2d 304, 307 & n.1 (9th Cir. 1990). By expressly reserving the 180-day bar issue for future determination, the bankruptcy court manifested its intent that the dismissal order was **not** its final act in the matter. Consequently, the order dismissing Desert Springs Financial's bankruptcy case has not yet become final and appealable, and the time to appeal has not yet run. Id.

## ISSUES

1.   Was Mitchell's proof of claim sufficiently compliant with the Rules to qualify for the Rule 3001(f) presumption?
2.   Did Shin present sufficient evidence in support of her claim objection to overcome the presumptive validity of Mitchell's claim?

## STANDARDS OF REVIEW

Claims objection appeals can involve both legal and factual issues. We review the legal issues de novo and the factual issues for clear error. See Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 918 (9th Cir. BAP 2011).

Whether the bankruptcy court identified and applied the correct burden of proof is a question of law we review de novo. Margulies Law Firm v. Placide (In re Placide), 459 B.R. 64, 71 (9th Cir. BAP 2011) (citing People's Ins. Co. of China v. M/V Damodar Tanabe, 903 F.2d 675, 682 (9th Cir. 1990)). On the other hand, "[w]hether evidence is sufficient to rebut an evidentiary presumption is a question of fact reviewed for clear error." Garner v. Shier (In re Garner), 246 B.R. 617, 619 (9th Cir. BAP

11

2000) (citing <u>Sierra Steel, Inc. v. Totten Tubes, Inc. (In re Sierra Steel, Inc.)</u>, 96 B.R. 275, 277 (9th Cir. BAP 1989)).

While interpreting the Rules to determine what is required to file a procedurally compliant proof of claim is a question of law, whether a particular proof of claim has been executed and filed in compliance with those Rules is a question of fact reviewed for clear error. <u>Id.</u> (citing <u>Ashford v. Consolidated Pioneer Mortg. (In re Consolidated Pioneer Mortg.)</u>, 178 B.R. 222, 225 (9th Cir. BAP 1995)).

"A bankruptcy court's factual findings are not clearly erroneous unless they are illogical, implausible or without support in the record." <u>Ezra v. Seror (In re Ezra)</u>, 537 B.R. 924, 929 (9th Cir. BAP 2015) (citing <u>Retz v. Samson (In re Retz)</u>, 606 F.3d 1189, 1196 (9th Cir. 2010)).

## DISCUSSION

**1.   General Legal Standards Applicable To Claims Litigation**

We travel a well-worn path in stating the respective burdens and obligations of the parties in claims litigation. Nonetheless, because this appeal hinges on the appropriate allocation and application of these burdens and obligations, we once again state them in detail.

A claim is deemed allowed absent objection from a party in interest, § 502(a), and a procedurally compliant proof of claim is prima facie evidence of the validity and amount of the claim. Rule 3001(f).

A mere formal claim objection, without evidence, cannot defeat a claim presumed to be valid under Rule 3001(f). <u>Lundell v. Anchor Constr. Specialists, Inc.</u>, 223 F.3d 1035, 1039 (9th

12

Cir. 2000). To overcome the Rule 3001(f) presumption, the objecting party must present evidence tending to rebut the claim – evidence with probative force equal to that of the creditor's proof of claim. <u>Id.</u> As a practical matter, "the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." <u>Id.</u> at 1040 (quoting <u>In re Allegheny Int'l, Inc.</u>, 954 F.2d 167, 173–74 (3d Cir. 1992)) (emphasis omitted).

If the objecting party successfully rebuts the presumption, the claimant bears the burden of proof to show by a preponderance of the evidence that its claim is valid, and "the ultimate burden of persuasion remains at all times upon the claimant." <u>Id.</u> at 1039.

But if the objecting party does not rebut the presumption, the claims litigation ends there; the claim should be allowed without the claimant bearing any further burden to demonstrate the validity of its claim. <u>Id.</u> at 1041.

**2. Applicability of Rule 3001(f) Presumption**

Rule 3001(f) states: "A proof of claim **executed and filed in accordance with these rules** shall constitute prima facie evidence of the validity and amount of the claim." (Emphasis added.) In turn, other parts of Rule 3001 set forth the various requirements for a procedurally compliant proof of claim. Subdivision (a) of Rule 3001 requires proofs of claim to be in writing and to substantially conform to the Official Form (currently, Official Form 410). With exceptions not relevant here, subdivision (b) of Rule 3001 specifies that a proof of claim should be signed by the creditor or its authorized agent. Meanwhile, subdivision (c)(1)

13

required Mitchell to attach to his proof of claim the writings on which his claim and his security interest were based – the note and the deed of trust – and subdivision (d) required Mitchell to submit with his proof of claim evidence that his security interest had been perfected.

On its face, Mitchell's proof of claim satisfied all of the above requirements. While there are additional requirements for claims arising from open-end or revolving consumer credit agreements, see Rule 3001(c)(3), and for claims against individual debtors, see Rule 3001(c)(2), none of those special requirements apply here.

Shin argues that Mitchell's proof of claim was not procedurally compliant, but most of her arguments make no sense. Shin contends that the proof of claim should have been signed by Mitchell, should have been signed by someone with personal knowledge of the original loan transaction and should have been accompanied by a supporting declaration signed under penalty of perjury and by foundational evidence authenticating the note and the deed of trust. None of these items are identified in the Rules as proof of claim requirements, nor has Shin cited us any authority making them requirements. Of particular note, Mitchell's proof of claim was signed by the same attorney who has been representing Mitchell throughout this claim dispute, and in the proof of claim's signature block, Mitchell's attorney checked the appropriate box on the Official Form reflecting that he is "the creditor's attorney or authorized agent."

Most of the other points Shin raises in an attempt to

14

demonstrate that Mitchell was not entitled to the Rule 3001(f) presumption more properly pertain to the issue of whether there was adequate evidence in the record to rebut the presumption.

There is, however, one aspect of Shin's challenge to the application of Rule 3001(f) that we must consider more carefully. In essence, Shin argues that, because Murray and Mitchell both were insiders and because Murray was the managing member of Desert Springs Financial, Rule 3001(f) should not apply at all to Mitchell's proof of claim. Put another way, Shin asserts that, in light of Supreme Court and Ninth Circuit authority calling for heightened scrutiny of insider transactions with debtor business entities, the Rule 3001(f) presumption should not apply at all to claims arising from insider transactions. Shin relies upon Pepper v. Litton, 308 U.S. 295 (1939), and Brewer v. Erwin & Erwin, P.C. (In re Marquam Investment Corp.), 942 F.2d 1462 (9th Cir. 1991). These two cases stand for the general proposition that, in bankruptcy claims litigation, insider transactions must be "subjected to rigorous scrutiny" and the insider claimant has the additional burden of proving "the good faith of the transaction" and "its inherent fairness." Pepper, 308 U.S. at 306; accord, Marquam Inv. Corp., 942 F.2d at 1465.

Even so, nothing on the face of Rule 3001(f) (or on the face of Pepper or Marquam) restricts insider creditors from the benefit of the presumption, and the circuit decisions that have specifically considered the relationship between insider claims and Rule 3001(f) have concluded that the presumption still applies. More specifically, the additional burden under Pepper and Marquam comes into play only if the proof of claim does not

15

procedurally qualify for the presumption or if the objecting party successfully rebuts the presumption. See, e.g., Stancill v. Harford Sands Inc. (In re Harford Sands Inc.), 372 F.3d 637, 640–41 (4th Cir. 2004); McGee v. O'Connor (In re O'Connor), 153 F.3d 258, 260–61 (5th Cir. 1998).

Harford Sands' and O'Connor's treatment of the interrelationship between Rule 3001(f) and the Pepper/Marquam rigorous scrutiny standard makes sense. Congress obviously knew how to qualify and restrict the claims of insiders when it wanted to do so. See § 502(b)(4). And yet nothing in the Code or Rules suggests that insiders should not have the benefit of the Rule 3001(f) presumption. In the absence of a Congressional directive, or some explicit qualifying language in the Rules, we decline Shin's invitation to create our own insider exception to the Rule 3001(f) presumption based on the general principles of equity Pepper and Marquam relied upon. To engage in this type of equitable revision of the Code or the Rules would invite reversal. See, e.g., Law v. Siegel, 134 S. Ct. 1188, 1196–97 (2014) (reversing bankruptcy court's order surcharging exemption on equitable grounds not set forth in Code); Gardenhire v. IRS (In re Gardenhire), 209 F.3d 1145, 1152 (9th Cir. 2000) (reversing Panel decision affirming allowance of an untimely proof of claim because Panel impermissibly extended on equitable tolling grounds claim filing deadline specified in Rules).

Thus, the bankruptcy court did not err in applying the Rule 3001(f) presumption to Mitchell's claim.

**3. Evidence In The Record Countering the Presumption**

Having concluded that the Rule 3001(f) presumption applied,

16

we next must consider whether Shin rebutted the presumption of validity arising from Mitchell's procedurally compliant proof of claim. The undisputed facts in the record establish that: (1) the debtor LLC's managing member executed the note and deed of trust in favor of his son roughly eight months after the loan transaction supposedly occurred; (2) the note and the statement of indebtedness attached to the proof of claim contained errors and/or irregularities; (3) the debtor's general ledger entries at the time the Shin loan was repaid included a $600,000 credit to the Shin loan payable account and a $600,000 debit to the Murray capital account; and (4) the same books and records showing the repayment of the Shin loan do not show any Mitchell loan payable account or any activity related to such an account.[4]

Taken together, the above-referenced undisputed facts potentially tend to show that Mitchell and Murray, after the transaction occurred, attempted to re-label what actually was a capital investment by Murray as a secured loan from Mitchell in an attempt to keep Desert Springs Financial's assets away from its creditors. These facts were "some evidence" that Murray and Mitchell fabricated documentation for a nonexistent loan in a

---

[4] Both parties at oral argument claimed that the bankruptcy court did not consider the books and records Shin presented with her reply brief. This claim is incorrect. The bankruptcy court's evidentiary rulings only addressed Shin's original declaration; nothing in the record suggests that the bankruptcy court excluded any part of Shin's supplemental declaration or any of the exhibits attached to the supplemental declaration. To the contrary, the bankruptcy court specifically stated that it had considered the books and records Shin presented and specifically addressed those documents in the process of explaining its reasoning for overruling Shin's claim objection.

17

manner that is reminiscent of the sham transaction described in Pepper, 308 U.S. at 297-301. And we conclude that this evidence was of equal probative force to the proof of claim and its attachments (including the note and the deed of trust).

The bankruptcy court's determination that the above-referenced facts were insufficient to rebut the presumption of validity arising from Mitchell's proof of claim was illogical and hence clearly erroneous. The bankruptcy court relied upon its own speculation that Murray and Mitchell might have agreed to change the nature of the transaction after it occurred. (This theory is inconsistent with the loan documentation and with Mitchell's declaration, in which he insisted that the transaction always was conceived of as a secured loan from him to Desert Springs Financial.) More to the point, the bankruptcy court's reliance on this theory begs the question as to whether Shin presented sufficient evidence to rebut the presumption of validity – a question we have now answered in the affirmative.

Because we have determined that the bankruptcy court's order overruling Shin's claim objection must be vacated as it was based on a clearly erroneous factual finding, we do not need to consider any of the bankruptcy court's evidentiary rulings against Shin.

**4. Proceedings On Remand**

We acknowledge that the bankruptcy court has entered an order dismissing Desert Springs Financial's bankruptcy case. As a result, the bankruptcy court on remand might determine that there is no need (or continuing jurisdiction) to address further Shin's claim objection unless an appeal is taken from the case

18

dismissal order and unless that order is reversed on appeal.

Should there be any future claim objection proceedings following remand, in light of Shin's rebuttal of Mitchell's prima facie case, Mitchell would bear the burden of proof to establish the validity of his claim by a preponderance of the evidence, Lundell, 223 F.3d at 1039, plus Mitchell would bear the additional burden of showing both good faith and the inherent fairness of the transaction. In re Marquam Inv. Corp., 942 F.2d at 1465; accord In re Harford Sands Inc., 372 F.3d at 640-41; In re O'Connor, 153 F.3d at 260-61.

If further claim objection proceedings do take place after remand, unless the parties agree otherwise, the bankruptcy court likely would need to reopen the record and likely would need to hold an evidentiary hearing to resolve the claim objection. We understand why the bankruptcy court previously did not hold an evidentiary hearing. Neither party argued that an evidentiary hearing was necessary. Instead, both parties asserted that they should prevail without the need for an evidentiary hearing. The bankruptcy court largely agreed with Mitchell's position, ruling that Shin had not presented sufficient evidence to rebut the presumption of validity of Mitchell's claim, so no further proceedings (evidentiary or otherwise) were necessary. In addition, Shin has not argued on appeal that the bankruptcy court should have held an evidentiary hearing.

Sometimes, claim objections can be so lacking in merit, and in evidence presented, that an evidentiary hearing would not be needed to properly dispose of them. Compare In re Garner, 246 B.R. at 623-25, with Reliance Steel & Aluminum Co. v. Locklin (In

19

re Locklin), 2015 WL 8267995, at *6-7 & n.4 (Mem. Dec.) (9th Cir. BAP Dec. 7, 2015). This is not one of those cases. Here, the bankruptcy court overruled Shin's claim objection without holding an evidentiary hearing based on the incorrect premise that Shin had not presented sufficient evidence to overcome the presumption of validity of Mitchell's claim. On remand, the bankruptcy court will need to reevaluate the necessity of an evidentiary hearing in light of our holding.

**CONCLUSION**

For the reasons set forth above, the bankruptcy court's order overruling Shin's claim objection is VACATED, and this matter is REMANDED for further proceedings consistent with this decision.